2948

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

HON. JENNIFER L. THURSTON


UNITED STATES OF AMERICA,    )
                          ) 1:20-cr-00238-JLT-SKO
        Plaintiff,    )
                          ) Jury Trial, Day 14
    vs.                )
                          )
KENNETH BASH, et al.      ) Volume 14
                          ) Pgs. 2948 - 3060, inclusive
        Defendants.   )
                          )


Fresno, California            Friday, February 7, 2025


REPORTER'S TRANSCRIPT OF PROCEEDINGS


REPORTED BY:  RACHAEL LUNDY, CSR, RMR, Official Reporter

Proceedings recorded by mechanical stenography, transcript
produced by computer-aided transcription.

2949

**APPEARANCES OF COUNSEL**:

For the
Government:

**STEPHANIE STOKMAN**
Assistant U.S. Attorney
2500 Tulare Street, Rm. 4401
Fresno, California  93721

**JARED ENGELKING**
Department of Justice
1301 New York Avenue, N.W.
Washington, DC 20005

**JAMES ROBERT CONOLLY, GOVT**
U.S. Attorney's Office
501 I Street, Suite 10-100
Sacramento, CA 95814

For Defendant
Johnson:

Law Offices of Andrea Luem
Attorneys at Law
400 South Forth Street, Suite 500
Las Vegas, Nevada  89101
BY:  **ANDREA LEE LEUM, ESQ.**

Law Offices of Ryan J. Villa
5501 Eagle Rock Avenue NE
Suite C2
Albuquerque, NM 87104
BY:  **RYAN J. VILLA, ESQ.**

For Defendant
Clement:

Fisher & Byrialsen, PLLC
Attorneys at Law
99 Park Avenue
New York, NY 10016
BY:  **JANE FISHER-BYRIALSEN, PHV**

Ruhnke And Barrett
29 Broadway, Suite 1412
New York City, NY 10006
BY:  **JEAN DE SALLES BARRETT, PHV**

For Defendant
Stinson:

Law Office of Kenneth Alan Reed
406 W 4th Street
Santa Ana, CA 92701-4505
BY:  **KENNETH ALAN REED, ESQ.**

1    Friday, February 7, 2025                    Fresno, California

2    8:00 a.m.                                 Jury Trial Day 14

3        (The following proceedings were held in open court:)

4            THE COURT:  All right.  We have everyone here.  We're

5    still waiting on a couple jurors, but is there anything to

6    discuss this morning?

7            MR. VILLA:  Your Honor, I think just a ruling on the

8    motion for Rule 29.

9            THE COURT:  Yeah, I took that under submission.

10           MR. VILLA:  Oh, okay.

11           THE COURT:  All right.  Anything else?

12           MS. FISHER-BYRIALSEN:  No, I think just the

13   scheduling, Your Honor.  If we were going to discuss the jury

14   instructions today, and then maybe advise our clients about

15   their rights to testify, if you want that on the record, and

16   the waiver, or whatever the decision everybody has on that.

17           THE COURT:  I don't feel it's necessary to have it on

18   the record, unless the government wants it, or unless you want

19   it.

20           MS. FISHER-BYRIALSEN:  That's up to the government

21   and the Court.  I don't --

22           THE COURT:  Ms. Stokman, do you have a position on

23   that?

24           MS. STOKMAN:  The government doesn't have a position

25   on that, we'll leave it up to counsel.  We expect that counsel

2951

1    has advised them properly and they've made that decision,

2    because counsel here is experienced and know what the

3    parameters and law is regarding that decision.

4            THE COURT:  All right.  Anything else?

5            All right.  We'll just --

6            MR. VILLA:  Your Honor, sorry, just in terms of

7    scheduling, it sounds like the plan is to do closing on

8    Tuesday?

9            THE COURT:  Yeah.

10            MR. VILLA:  And then, would you have the jury stay

11    and deliberate past 1:30 or do they just go till --

12            THE COURT:  They get to set their own schedule.

13            MR. VILLA:  I'm sorry?

14            THE COURT:  Once they start deliberating, the jury

15    sets the schedule.

16            MR. VILLA:  Okay.

17            THE COURT:  So they'll either decide to stay past

18    1:30 or they won't.  I suspect they will not, but we'll hear

19    from them.

20            MS. STOKMAN:  On that, Judge, I don't know -- and,

21    obviously, we defer to the Court, but knowing where they will

22    be on Tuesday, I'm not sure if it might be helpful for them to

23    have those discussions today in case they want to rearrange

24    their schedule already.

25            THE COURT:  That's a good idea.  I'll mention that at

1    the end.

2         MR. REED:  Seems like that issue kind of came up a

3    couple days ago and there were some adamant, No, we want to go

4    home.

5         THE COURT:  Right.

6         MR. VILLA:  Your Honor --

7         THE COURT:  Yes.

8         MR. VILLA:  -- with respect to the witnesses we had

9    intended to call that are in custody, we had a chance to

10   communicate with them this morning.  And based on those

11   communications, we have elected not to call them.

12        THE COURT:  Okay.

13        MR. VILLA:  Uh, you know, frankly, they are refusing.

14   And it's our decision not to go through that, not to call

15   them.  So it -- essentially, what we have left to do is just,

16   I guess, in front of the jury just say that we aren't calling

17   any witness.

18        THE COURT:  Does the government have any rebuttal?

19        MS. STOKMAN:  No.

20        THE COURT:  Okay.  So -- darn it.  Okay.  So then

21   we'll go ahead and bring them in and excuse them, with the

22   idea that they will talk about their schedule for Tuesday.  I

23   don't know if you have estimates as to your closing arguments?

24        MS. STOKMAN:  Judge, there was a time limit, right?

25        THE COURT:  Yeah.  I'm just wondering, if it's going

1    to be something less than that because, obviously, we're

2    talking about four and a half hours just of closing arguments

3    if everyone uses their full amount of time, I think.

4              MR. REED:  Time?

5              THE COURT:  Yeah, it's that darn courtroom procedure

6    order that I issued that I think had no effect whatsoever.

7              MR. REED:  I thought it was advisory.

8              THE COURT:  Oh, advisory.  Yeah, I do a lot of

9    advising...

10             So I had set an hour for each party.  If it turns out

11   you need, you know, an hour, 15, I'm not going to get the hook

12   out, but an hour is a really long time, especially when you

13   think the jury listens for the first ten minutes and maybe the

14   last ten minutes and --

15             MR. REED:  I got hook for the extent of that three

16   minutes because judge was all over me because the I was two

17   minutes over.

18             THE COURT:  Yeah.

19             MS. FISHER-BYRIALSEN:  Your Honor, just so the record

20   is clear, we do really appreciate all the work the US Marshals

21   have done to bring these guys here.

22             When we did talk to them, they -- well, one of them

23   indicated that there was no way that he was going to come in

24   the courtroom, which gave us the impression that he would have

25   to be forced and we don't want to put someone through a forced

 1  entry into a courtroom, so --

 2          But we do really appreciate what they did and they

 3  worked really hard to make this happen, and we're not -- we

 4  weren't doing that to waste anyone's time.

 5          THE COURT:  I understand.  Thank you.

 6          We are still waiting on one juror.  I think you

 7  should have all received jury instructions and verdict forms.

 8  These, of course, are what we're going to be talking about

 9  today.  I will note that I -- I've already made the

10  corrections related to the additional experts and adding

11  Mr. True to Number 14 and 15.

12          One thing that has occurred to me, I've been thinking

13  about it a couple days, and that is, I think Mr. Clement

14  suggested that as to Count 1, there should be a list of

15  predicate acts on which the jury must agree.  I didn't include

16  those, but when I think about it and look at the verdict form,

17  if there was a situation in which the jury found guilty as to

18  Count 1 but not as to any of the special sentencing factors,

19  there would maybe be a lack of affirmative evidence as to what

20  the agreement is.

21          It seems to me the only possible other act --

22  predicate act could be the fraud.  And in some ways it seems

23  to make sense, maybe, to include that, as well as murder,

24  under Count 1 related to predicate acts.  Because they've

25  heard so much evidence about that, they're going to get

1    instruction about that, but there's nothing -- there's nothing

2    on a verdict form that makes reference.

3         So food for thought when we come back to that.

4         MR. REED:  I didn't read the two because they have

5    lawyers, but when I read Mr. Stinson's I saw that there's an

6    A, which is on or about October 1st, 2022 -- well, first of

7    all, Mr. Stinson has no VICARs, so I assume that that's what A

8    is in the verdict form, where it says that he conspired to

9    kill Andrew Collins.

10        THE COURT:  A, there -- that's a sentencing factor

11   question, which would address penalty.

12        But as to, you know, it seems like there may need to

13   be a fraud slash -- because, again, if the situation is guilt

14   on Count 1, but a no on A, then there is ambiguity as to what

15   their agreement was.  I mean, there is and there isn't.  It's

16   implicit, but --

17        MR. REED:  There are -- I tend to not -- I try not to

18   ever tell a district court what other district courts have

19   done because district court judges don't like that.

20        THE COURT:  No, I'll tell you.  I looked at *Yandell*,

21   for example.  They did not do that.

22        MR. REED:  Yeah, but they've done that in the

23   Central District depending on -- especially when there's

24   multiple predicate acts and they list the predicate acts or

25   two predicate acts the jury must find.  I noticed they didn't

1   do it on *Yandell* and I assume, because of that, you didn't do

2   it and I just moved on.

3        THE COURT:  Yeah, I actually worked on this yesterday

4   and I included it and then I thought, well -- and then I

5   thought about it again and it makes sense to me that it's

6   included, just because I would rather the verdict form be

7   clear.

8        MR. REED:  So I'm not an opponent of confusion, I'm a

9   defense attorney, but I have to say, your interpretation -- I

10  mean, your ruling, because you don't have to interpret.  You

11  say what it is.

12       When you list what is a predicate act and then -- and

13  then the answer is -- let's say for the sake of argument the

14  jury wants to know, what's A about?  Well, the sentencing

15  factors, they don't get to deal with.

16       But A is also one of the -- one of the predicate acts

17  as to Mr. Stinson.  Again, I don't care about confusion.

18       THE COURT:  Yeah.

19       MR. REED:  But it is confusing, because I'm not

20  going -- we aren't going to argue that the same way.

21       THE COURT:  Yeah.

22       MR. REED:  That much I can guarantee you.

23       THE COURT:  And, of course, the jury doesn't know

24  it's a sentencing factor, so it kind of seems like, you know,

25  we could add B, EDD, you know.  And Ms. Stokman disagrees.

2957

1   But we're going to have conversation about this, obviously.

2          But, is the jury now ready?  Let's go ahead and bring

3   the jury in.  They're already going to be annoyed, I think,

4   but --

5       (Jury enters the courtroom at 8:17 a.m.)

6          THE COURT:  All right.  Thank you.  We have all of

7   our jury members back.

8          Did the defense have witnesses?

9          MS. FISHER-BYRIALSEN:  No, Your Honor.  On behalf of

10  Mr. Clement, the defense rests.

11         MR. VILLA:  On behalf of Mr. Johnson, we rest.

12         MR. REED:  On behalf Mr. Stinson, we rest.

13         THE COURT:  All right.  Does the government have

14  any -- well, obviously no rebuttal evidence.

15         MS. STOKMAN:  No.

16         THE COURT:  Ladies and gentlemen, this means that we

17  have concluded the evidence portion of this case.  Generally

18  in a trial, what happens next is the Court will give you

19  instructions that will apply to the law.

20         After that, you will hear arguments of counsel as to

21  their positions as to how it should turn out.  And then, after

22  that, I'll give you a few additional instructions, and then

23  you will begin to deliberate.

24         Unfortunately, at this point, for reasons that

25  shouldn't concern you, but will, I can't give the instructions

2958

1    today.

2            So that means that what we're going to do is, I'm

3    sorry to have brought you down here today, but we're going to

4    let you go today.  You will come back Tuesday, and we'll start

5    in that process as I've said.

6            I told you when we began this case that I set the

7    schedule when we're collecting evidence, and in trial, but

8    once you start deliberating, you set your schedule.

9            And this will not, at least at this point, involve

10    the alternates unless something happens over the weekend.

11    But -- so I'm going to ask, before you leave today, if you'll

12    just have a general idea, maybe a little discussion about what

13    your schedule will be, once you start deliberating.

14            If you -- I mean, coming in at 8:00, I know is hard,

15    maybe you want to come at 9:00.  I don't know, maybe you want

16    to work all day.  It's all up to you.  So if you can have some

17    preliminary discussions about that because it may mean that

18    you want to change something in your afternoon, I don't know,

19    but if you'll do that before you leave today, I'd appreciate

20    that.

21            Although it feels like maybe now is the time to start

22    deliberating, it is not.  You have to withhold your

23    consideration and your decisions about this case, your

24    opinions, until after your hear the instructions, after you

25    hear the arguments, and after you hear the views of your

2959

1    fellow jurors.

2          So while it might be tempting at this point to talk

3    about it or to form opinions, I am going to still instruct

4    you, until we meet again and you're in the deliberation room,

5    please don't form any opinions about this case.

6          Please don't discuss this case.  Please don't let

7    anyone discuss it with you.  Please don't do any independent

8    research, including visiting any sites, looking on the

9    internet, going to any place that has been mentioned in this

10   trial or consulting the media of any type.

11         And of course, if you see anything in the media about

12   this case, please do not read it, and report that to me.

13         All right, though, otherwise, I'm so sorry to bring

14   you down here today, but have a nice weekend and we'll see you

15   on Tuesday.  And again, Tuesday at eight o'clock and then

16   we'll go to your schedule after that.

17       (Jury exits the courtroom at 8:21 a.m.)

18         THE COURT:  All right.  To the instructions.

19         MS. FISHER-BYRIALSEN:  Your Honor, before we move

20   into that, Mr. Clement has a question that I'm relaying.

21         THE COURT:  Okay.

22         MS. FISHER-BYRIALSEN:  Uh, he's wondering, and I

23   don't know if Mr. Johnson has the same concern, that they --

24   during deliberations, do they have to be at the courthouse and

25   shackled up in that cell back there or can they brought over

2960

1   once there's a verdict?

2           Another reason for Mr. Clement's concern is that he's

3   finally been approved to have dentures, and of course, that's

4   now set for the next two weeks.

5           THE COURT:  Starting when?

6           MS. FISHER-BYRIALSEN:  I think it was starting this

7   week.  So through next week is when the procedure is going to

8   be scheduled, and he doesn't want to miss that either.

9           THE COURT:  I do not want him to miss that.  On the

10  other hand, to bring them -- I mean, that can be an hours'

11  long process.  And so while I -- I mean, it's truly up to

12  you-all whether you want to come or not.

13          I don't know how long it would take.  I don't see

14  us -- I mean, I think we're going to take most of the morning

15  at least, maybe the full normal day before the jury even

16  starts deliberating.  I don't know if they're going to

17  deliberate beyond that.

18          So I guess I can't advise you, but, yes, if you come

19  over, you're going to be at the -- the US Marshals will host

20  you in the way that they have.

21          DEFENDANT CLEMENT:  Well, if it's longer than a day,

22  I mean, just if I can come and get called.

23          THE COURT:  Yeah.  Yeah.  If you just refuse to get

24  on the bus, that's fine too.

25          DEFENDANT CLEMENT:  It won't be held against us?

2961

1          THE COURT:  No, no, no, no, no.

2          DEFENDANT JOHNSON:  Well, wait --

3      (Court reporter gains clarification.)

4          MR. VILLA:  I think what -- I know what you're

5  saying.

6          Your Honor, I think what Mr. Johnson is saying is if

7  there's, like, a jury note or they need to play an exhibit in

8  open court or something, that he doesn't need to be brought

9  back for that --

10          DEFENDANT CLEMENT:  Yeah.

11          MR. VILLA:  -- just for the verdict.

12          THE COURT:  Right.  But, you know, if they come to a

13  verdict, my point was it could be hours before we could get

14  Mr. Clement, Mr. Johnson, Mr. Stinson from Fresno County Jail.

15  It seems like it should take ten minutes, but it will take

16  hours.  And I mean -- and so that's the problem.  And hours is

17  not something that we generally will wait on a verdict,

18  especially -- I mean, if it comes at five o'clock, that could

19  be a problem.

20          DEFENDANT CLEMENT:  Can you read it without us?

21          THE COURT:  We could, yeah.  It's truly -- all of

22  this is up to you whether you want to be here.  Like I said a

23  few days -- weeks ago, I will not ever try to force you to

24  come.  Okay?

25          DEFENDANT CLEMENT:  I mean, just sitting in there all

1    day long.

2              THE COURT:  I know.  I get it.

3              DEFENDANT CLEMENT:  I got issues with that.

4              THE COURT:  Mr. Stinson has already signed a waiver,

5    so if he chooses not to come, Mr. Reed, you have that

6    authority.

7              You-all might want to do that in case --

8              DEFENDANT CLEMENT:  Right.

9              THE COURT:  -- there's not a -- I mean, because if

10   you fall ill, we might be in the same situation as last time

11   where I don't know if it's a voluntarily absence or not.  So

12   that's the concern about that.

13             So if you guys want to execute one of those, there

14   would be no question if you choose not to come.

15             DEFENDANT JOHNSON:  I just want to come for the

16   verdict.  That's it.

17             THE COURT:  Yeah.  Well, you'll be here on Tuesday,

18   and maybe you can think about it and decide what to do after

19   that.

20             All right.  Let's talk about jury instructions.

21             MR. VILLA:  Judge, one easy one might be the verdict

22   form for Mr. Johnson, I think inadvertently included the

23   Brizendine homicide, but he's not charged with that.

24             THE COURT:  All right.  I'm sorry.  Oh, yeah, right.

25   Okay.

1          MS. STOKMAN:  That's Section C on his verdict --

2          THE COURT:  Yeah.  Okay.

3          MS. STOKMAN:  Also maybe an easy verdict form request

4    from the government is that on the murder in aid of

5    racketeering counts, that we also list the victim names just

6    because some of them are, you know -- they don't have an

7    indictment in front of them.  It would probably be helpful for

8    them to know which count they're being asked to decide on.

9          THE COURT:  Okay.  And so you're saying -- for

10   example, I'm looking at page 3 of Mr. Johnson's.  It should be

11   as to Count 2, Roshanski?

12         MS. STOKMAN:  Correct.

13         THE COURT:  And then the other one --

14         MS. STOKMAN:  Ruslan, yes, with the long last name on

15   4.  And then Mr. Clement would have those two as well as

16   Michael Brizendine as to Count 4.  Count 5 is Ronald Ennis,

17   and Count 6 is James Yagle.

18     (Court reporter gains clarification.)

19         THE COURT:  Are there any objections to that?

20         MS. DE SALES BARRETT:  No, Your Honor.

21         MR. VILLA:  No, Your Honor.

22         THE COURT:  We'll make that correction.

23         All right.  Do we want to talk about verdict form

24   first, then?  That's fine with me.  Let's maybe do that.

25         Ms. Stokman, you did not seem to agree with the idea

2964

1  of listing the relevant predicate acts under Count 1.  Let me

2  hear what your comments are.

3      MS. STOKMAN:  Yes.  I know the reference to the

4  *Yandell* case in Sacramento was made.  And in that verdict

5  form, they also did not lay out every predicate act that would

6  fall under RICO.  That was a special sentencing addition as

7  well.

8      It's the government's position that special

9  interrogatories are not required without an *Apprendi* issue,

10  and here it only applies when there's a sentencing factor that

11  would cause the sentence to go over the statutory maximum,

12  which on Count 1 is 20 years, unless there is a special

13  sentencing factor.

14      The government is limited to the predicates that it

15  noticed in the indictment as far as special sentencing

16  factors, but when it comes to racketeering offenses and

17  racketeering predicate acts, the government is not limited to

18  those that are in the indictment.

19      And so it would be much more confusing for them to

20  have to lay out all of those predicate acts when it is

21  inherent in the instructions as it is in such -- like an

22  846 drug conspiracy.  They do not find overt acts.  That is

23  inherent in the actual instructions of the crime.  That would

24  be the same here.

25      And so multiple courts have found that this is not

1  required when it comes to a RICO conspiracy, and the -- as far

2  as confusion, I think that it would create -- it's our

3  position that it would create much more confusion than it

4  would be helpful and that the Court has properly addressed the

5  special sentencing factors, which is required.

6          We also will note that we were specific in what those

7  special sentencing factors related to.  We don't think that

8  *Yandell* properly did that as far as being specific.  And so in

9  the government's proposed verdict forms, which is what the

10 Court adopted, we believe that the specificity on those

11 special sentencing factors was very important because it

12 isn't -- it isn't a special sentencing factor, necessarily,

13 for a murder count if they didn't find that that defendant

14 was -- was particularly and individually involved in that

15 predicate offense.

16         THE COURT:  You say you have authorities that say

17 that it's not required.  Can you let me know what you're

18 referring to?

19         MS. STOKMAN:  Yes.  I do not think the Ninth Circuit

20 addresses it directly, but in *United States v. Shenberg* in the

21 11th Circuit, 89 F.3d 1461, there was a request for a special

22 verdict on a RICO conspiracy, and that was denied and properly

23 upheld.

24         *United States v. Applins*, A-P-P-L-I-N-S, was the

25 Second Circuit, 637 F.3d 59.  And other district courts have

2966

1   found this to be true as well.

2          There is a Ninth Circuit case, just one second, which

3   actually went to not a RICO conspiracy, but a RICO -- an

4   outright RICO charge under 1962(a), which the government finds

5   would -- potentially if any charge was to require this to be

6   laid out, it would be that.  A conspiracy is a lot different

7   than that.  And even in that situation, in

8   *United States v. Robertson*, 74 F.3d 1247, the Ninth Circuit

9   found that it was not error for the district court to not use

10  a special verdict form requiring the predicate acts to be

11  listed.

12          THE COURT:  Can you tell me what you think the harm

13  is?  Are we talking about risk of confusion?  What do you see

14  the harm is in listing the predicate acts for which there's

15  been evidence presented?

16          MS. STOKMAN:  It would be confusing in -- because it

17  would require the jury to act -- I mean, the way that it's

18  laid out in the proposed instructions from Defendant Clement

19  it is not clear as to how many predicates are involved.  There

20  was a list.  It would -- the list would have to be every

21  predicate offense that we're giving them instructions for that

22  fell under the RICO conspiracy.  And it would be confusing, as

23  it muddies the water, also, with those special sentencing

24  factors, as they would also need to be given.

25          When the instruction is -- the instruction, courts

1    have found to be sufficient in letting the jury know what the

2    elements of the RICO conspiracy are and they are supposed to

3    follow those elements in coming to their decision, the

4    elements of that crime are not laid out on a verdict form.

5            THE COURT:  So you're saying that if that were -- if

6    the predicate acts were listed -- or specifically the murder

7    predicate acts were listed, then there's the potential for

8    inconsistency between Count 1 and the remaining counts?

9            MS. STOKMAN:  Potentially, and that has happened

10   before when it's been confusing to jurors.  But, yes, that

11   there could be inconsistencies, but also that it would cause

12   some confusion as to why it was laid out.

13           And, also, it's the government's position that,

14   again, as an element of an offense, that does not require --

15   RICO conspiracy does not require the elements to be found on a

16   verdict form.  And again, I'll liken it to the conspiracy

17   under 846, which is different than a conspiracy under 371,

18   which does require the jury to find overt acts.  846

19   inherently, in the instruction, gives the jury what they need,

20   and overt acts are never on a verdict form.

21           So the likeness to that on the RICO conspiracy with

22   regard to predicate acts is where the government believes that

23   this would be -- it's unnecessary, it causes undue confusion,

24   and it also could very much muddy water in the special

25   sentencing circumstances, which are the more important

1  elements for defendants to know that the jury came to a

2  unanimous conclusion on.

3      THE COURT:  All right.  For the defense, anyone want

4  to talk about that?

5      MS. DE SALES BARRETT:  Yes, Your Honor.

6      THE COURT:  All right.  Go ahead.

7      MS. DE SALES BARRETT:  *United States v. Frega,*

8  *179 F.3d 793*, Ninth Circuit case in 1999, the Court

9  highlighted the necessity for the jury to identify and

10 unanimously agree upon predicate acts that formed the basis of

11 the RICO conspiracy charge.  Court noted the jurors' confusion

12 and lack of clear instructions on identifying predicate acts

13 could lead to nonunanimous verdict, which would be legally

14 inadequate.

15     And in Your Honor's instructions, Your Honor is

16 telling the jury that they should be unanimous in their

17 considerations of these acts.  And as a result of that, if

18 that's not on the verdict sheet, we will never know whether or

19 not they -- what they agreed upon when they agreed upon it.

20 Presumably they could be asked the question if they were

21 unanimous, but if it's not on the verdict sheet, I don't

22 think -- I don't think that it would be very clear as to

23 whether or not they were unanimous in their considerations of

24 which predicate acts they find.

25     THE COURT:  What was the page cite?

1            MS. DE SALES BARRETT:  Uh, I don't have an exact

2    page, I only have the full cite.

3            THE COURT:  I have the case here.

4            MS. DE SALES BARRETT:  Let me see if he's got it.

5            THE COURT:  It looks to me like this case relates to

6    a failure to give instructions on predicate state bribery

7    acts.  I don't think it deals with the verdict form, does it?

8    I'm not seeing that.  I'm looking at page 806, 807.

9            It's an instruction case, isn't it?

10            MS. DE SALES BARRETT:  Yes, Your Honor.  But I --

11            THE COURT:  Instructions are going to be given, for

12    sure.  We're talking about does it need to be on the verdict

13    form.

14            MS. DE SALES BARRETT:  Right.

15            THE COURT:  This case doesn't seem to speak to that,

16    does it?

17            MS. DE SALES BARRETT:  Your Honor, if they -- if we

18    need a unanimous decision and the Court is asking for a

19    unanimous decision, then -- on the issue of the predicate act,

20    it seems to me that it is completely reasonable for that to be

21    on the verdict form, so that we can be assured that they are

22    unanimous.

23            Your Honor is telling them they have to be unanimous,

24    but you're not asking them as to what they were unanimous on.

25            THE COURT:  Right.  But what I'm trying to get at is

1  we all know they have to have instructions on predicate acts.

2  I'm trying to figure out what the authority is as to whether

3  it should be on the verdict form.  I think we agree -- I mean,

4  there's no dispute that they have to be instructed, the

5  instructions are already included.  But I don't really think

6  *Frega* advances the conversation much, unless I'm missing

7  something here in my speed read of that case.

8          MS. DE SALES BARRETT:  There -- let's see.  I don't

9  know how we assure that they are unanimous, Your Honor.

10          THE COURT:  Well, I mean, they have to be unanimous

11  to come to a verdict.  What you're saying --

12          MS. DE SALES BARRETT:  Right.

13          THE COURT:  -- is we wouldn't have certainty as

14  to -- if they do not find the questions following Question 1,

15  the A through whatever, then there might be some uncertainty

16  as to what acts they are relying upon, I think is your

17  argument, which is what occurred to me as well.

18          MS. DE SALES BARRETT:  Yes, Your Honor.  And what I

19  can say too is logically from the perspective of someone

20  reading this verdict form, and reading the instruction, it is

21  inconsistent, really, not to seek a verdict on those -- seek

22  unanimity on the verdict form because -- and it could be

23  easily overlooked by the jurors with regard to the need for

24  such a finding.

25          THE COURT:  Any other comments by defense?

1          MR. VILLA:  I just want to make sure there's no

2     dispute about the Lowrey murder needs to be on the verdict

3     form for Count 1.  We're just talking about other predicate

4     acts?

5          THE COURT:  Yeah, the question is whether under

6     Count 1, before you get to question -- well, it's kind of set

7     up differently.  When I look at -- let me look at

8     Mr. Johnson's form.

9          When you get to Question 2, it's whether that also

10    has to include whatever predicate acts would, you know, or

11    make sense probably EDD fraud -- well, everything that's

12    listed in the instruction about the predicate acts that are at

13    issue.

14         MR. VILLA:  Yes.  So I mean, I agree with

15    Mr. Clement's position that they all need to be included, but

16    for --

17         THE COURT:  But what do you propose as to Question 3,

18    3 and 4 which relate to Counts 2 and 3?  Because the

19    government is saying, look, you know, you if -- you run the

20    risk of an inconsistent verdict.

21         If they were to say, you know, no, no as to -- no

22    murder as to Count 1 but find Counts 2 and 3, the verdict

23    would be, you know, we would have to reject the verdict.  We

24    would have to go back and then we go, well, we've got a

25    problem on our verdict form because it doesn't preclude that.

1      So I guess another way of doing it -- and this is

2    what brings up Ms. Stokman's point is -- as to a predicate

3    act, you don't include the elements.  You just say this, this,

4    and this.

5      So this would mean that they would have to be -- I

6    guess it could be done Question 1, predicate acts, EDD fraud.

7    I mean, they're not going to know predicate act, but A, B, you

8    know, say it's EDD fraud, it's distribution of drugs,

9    whatever.

10      Then you get to the sentencing factors, they'd have

11    to make those decisions, Question 2.  Then you get to

12    Question 3 and 4, uh, seems like you would not list murder as

13    to Count 1 and then there's some confusion as to whether that

14    could be the sole basis for Count 1.  It would suggest

15    otherwise.  I don't think that would make sense either.

16      MR. VILLA:  Well, the primary concern I have about

17    that we have to include Mr. Lowrey's murder in Count 1 is

18    because it changes the maximum penalty.

19      With respect to inconsistency between Count 1, 2 and

20    3, to some extent we can't -- we can only avoid it so much

21    because, you know, the jury could acquit of Counts 2 and 3 for

22    Mr. Johnson, but not Count 1.

23      And you know, due to the differences in liability

24    when it comes to conspiracy versus VICAR.  You know, RICO

25    conspiracy and the *Pinkerton* doctrine, I think, encompasses a

1   lot more conduct even though Mr. Johnson isn't necessarily a

2   primary participant.

3        If he's a conspirator, there's *Pinkerton* liability

4   and so, you know, the jury could convict on Count 1 but not

5   Counts 2 and 3, and that also changes the penalties.

6        And so I think that we can only avoid inconsistent

7   verdicts so much.  And if they did the opposite somehow and

8   said, you know, you're not guilty of Count 1 but you are of

9   Count 2 and 3, you know, I mean, we've got a problem, but I

10  mean, it's the way the case was pled by the government.

11       THE COURT:  Well, the problem would be not so much

12  that there's -- I mean, the verdict would be in order.  The

13  verdict form would be in order and in that situation what

14  would be is, you know, there would be a question as to what

15  predicate act or acts that there was unanimity on.

16       MR. VILLA:  Yeah, I think that's separate from the

17  murders.  That's a separate issue as far as EDD fraud,

18  robbery, et cetera.

19       But I do think that there needs to be some -- I mean,

20  they're being instructed on each of those crimes that are

21  alleged in this case under the RICO conspiracy and I do

22  think -- and they're told specifically, you have to find two

23  predicate acts at a minimum.

24       THE COURT:  The other way to do it, I suppose, is to

25  say Count 1, verdict.  If it's guilty, then they would go to

1    Count 2 -- I'm sorry, Question 1.  If it's guilty, they go to

2    Question 2.

3          If those answers are all no, then Count 2 and 3 would

4    be no, then we could have a final question of if you, you

5    know, find count -- if you answer 1 guilty, but question -- no

6    as to Question 2, not guilty as to 3 and 4, then answer

7    Question 5, which is predicate acts.

8          MR. VILLA:  I mean, that certainly might work for

9    Mr. Johnson.  I don't know about, you know, the other

10   defendants.  But essentially, you'd be saying if you say no

11   on 2 --

12         THE COURT:  Then you don't ever get to that question.

13         MR. VILLA:  -- as to the Lomita murders, then the

14   answer -- you don't need to answer 3 and 4.

15         THE COURT:  Right.

16         MS. DE SALES BARRETT:  Well, that would be a similar

17   situation to Mr. Clement.  So -- but the only point that I

18   want to make here, Your Honor, is if the unanimity on

19   predicate acts is an element of the offense, then we need a

20   finding.

21         THE COURT:  Well, yes and no.  Because -- I guess the

22   question -- maybe we're talking beyond each other, and that

23   is, if there is question -- answer, guilty Count 1, and any of

24   Count 2 has a yes, do you need to dig deeper than that?

25   Probably not, right?

2975

1          MS. DE SALES BARRETT:  I'm sorry, are we
2    talking -- I'm getting mixed up with sections and counts
3    and --
4          THE COURT:  Right.  So look at the verdict form.  If
5    Question 1 as to Count 1 --
6          MS. DE SALES BARRETT:  Yes.
7          THE COURT:  -- is guilty --
8          MS. DE SALES BARRETT:  Yes.
9          THE COURT:  -- and then Question 2 as to any of those
10   listed under Count 2 -- I mean Question 2 are yes, then you
11   have unanimity as to at least one predicate act, right?
12         MS. DE SALES BARRETT:  Not necessarily -- Your Honor,
13   that -- the problem is that we're taking it, then, out of
14   order.  The question is --
15         THE COURT:  It is not, though.
16         MS. DE SALES BARRETT:  -- you're not guilty on
17   Count 1 if you don't have unanimous agreement on a predicate
18   act, which means that the -- you know, if -- if they find they
19   are guilty on Count 1, then directly underneath that should be
20   the inquiry with regard to the predicate act.
21         THE COURT:  Uh, yes and no.  Because what I
22   suggested -- because it does say:  You must find
23   unanimously -- the instructions say:  You must find
24   unanimously as to the predicate acts.
25              What I'm talking about more is really in the nature

2976

1 of a special interrogatory to the jury, and that is, Okay, so

2 you found this.  Tell us why you found that, and here are your

3 options.  Check the box of what your options are.

4      And adding that as the final question means that they

5 don't have to answer it in certain circumstances, but they do.

6      So I guess my question to you is, I mean, as a former

7 appellate attorney, I guess my question to you is, do you

8 really want to dig that deep?

9      MS. DE SALES BARRETT:  I think we should have the

10 jury make a finding on the predicate acts.  I think it needs

11 to be a jury finding on the verdict sheet, and I think it

12 belongs -- it should be incorporated within the verdict of

13 Count 1 prior to the special findings.

14      THE COURT:  I don't have a problem including it, but

15 if I do it, I'm not going to do it that way because I think it

16 creates a different issue that you're not concerned about that

17 I am concerned about, and that is inconsistencies.

18      So if you want that, I'll add it as Question -- that

19 will be Question 8, to be decided only in the event of noes as

20 to all Question 2 and not guilty as to Questions 3 through 7.

21      MS. STOKMAN:  I'm sorry.  If I may, this does not

22 apply to Mr. Stinson, which causes another problem.

23      Uh, also, again I'll point out that this is asking

24 the jury to show their work as to how they come to the

25 conclusion about Count 1.  That, in essence -- the unanimous

1    decision is on every element of every crime.  And we are not

2    laying out the other elements.  We're not laying out the

3    elements in the VICAR charges.  That's just not how verdict

4    forms go.

5              So we'll point again to the fact that case law does

6    not dictate that this is necessary under a RICO conspiracy.

7    It does become confusing.

8              The standard to reaching the predicate act discussion

9    under Count 1 is different than the special circumstances, and

10   so those -- the separation of that needs to be very clear.

11   Again, there's no *Apprendi* issue here when it comes to the

12   predicate acts that they have to find to go to Count 1.  That

13   does come into play when it comes to special circumstances,

14   including the Lowrey murder, which is why it's on there,

15   because the sentencing is affected.

16             So the confusion comes in in that we're asking them

17   to show what they are doing in the unanimous decisions on one

18   element of multiple elements of one crime, which the

19   government does not believe is necessary and would be

20   confusing, especially when they could find that the defendants

21   knew or were a part of -- because they don't have to

22   personally commit any of these offenses.  And that's another

23   confusing, I think, element when you're asking them to decide

24   if they have personally been involved in certain things and

25   then you have all these predicate acts that come through.

But in any event, there's then the issue of if they find that there were two instances of, say, murder or two instances of drug trafficking, now are we going to have columns that say these are the predicate offense. How many of these -- I mean, it just becomes very tedious. And again, it's asking them to show their work on an element of a crime that the jury instruction addresses, and there are multiple elements that require the same unanimous vote, and we aren't asking them to show that all in a verdict form.

THE COURT: The only difference, I think, in that circumstance in your argument is the instruction specifically tells them that they have to have unanimity on that issue.

I mean, the other way to do it, and I don't know if any of you practice civil, but in civil cases, the verdict -- this is the -- you know, you never see a verdict form this simple. It's always, you know, If yes on 1, go to Question 7, you know. If no there, go to Question 29. Come back to Number 2 and then spin around three times and sign the verdict form.

So it's not -- juries do it all the time. But the other way to handle this, which addresses everyone's concern, is if it comes back with a yes as to Count 1, no or not guilty as to everything else, we could then have prepared a set of special interrogatories to the jury that the jury would complete at that time to tell us what those acts are. That

1    preserves your issue for appeal.

2          But what it doesn't do is introduce the confusion

3    that's potentially in asking them to make decisions, in

4    essence, for example, as to the murder three times.

5          Because, I mean, the risk is still, if they make this

6    as their verdict form and you have a special interrogatory and

7    it comes back and says, Oh, no, we don't find murder,

8    that's --

9          MS. DE SALES BARRETT:  Well, Your Honor, that's why I

10   think it belongs as Number 2.

11         THE COURT:  Yeah, I understand where you're coming

12   from.  I understand all your motivations behind it.  And I

13   understand the various focus, but I'm trying to get a clean

14   verdict, and this seems to be, to me, the best way to do that

15   without introducing the confusion that I think is inherent in

16   what's been proposed.

17         I don't think it's error to do it either way, but

18   we'll end up -- what I'm suggesting is the way that I think is

19   cleanest, that it -- it poses the least potential.

20         And what I would do is -- I realize what Ms. Stokman

21   is saying, but the defense has never asked for, Tell me how

22   many times.  They just gave me a list.  That would be your

23   special interrogatory to the jury in the event it was

24   necessary.

25         MS. STOKMAN:  But, Judge, they have to find two, and

1   they can absolutely could find two of the same type of

2   offense, which makes that, I think -- the question confusing.

3          I think what we've seen in other cases this happens

4   is that is a confusing question, especially when that element

5   goes to not whether defendants directly participated in that

6   act, but only knew and agreed that the coconspirators would be

7   engaging in that act.

8          And so it -- there's just a muddying, I think, of

9   this.  And I believe that this is why Courts have not held

10  that this is required.

11         And again, I'll point to the Ninth Circuit case from

12  '96 that they even said that in a RICO charge, which does --

13  the requirements for what the defendants actually did are

14  different in that charge versus a conspiracy.  Even in that,

15  they did not require that the predicates needed to be laid out

16  in the verdict form.  And that is a much stricter standard as

17  to what the defendants themselves needed to be found guilty

18  of.

19         And if that was not required in that type of

20  situation, a conspiracy case like this certainly would not be

21  required.  And that is consistent with other -- other

22  circuits.

23         THE COURT:  I don't disagree with you, I don't think

24  it is required, either.  The defense is requesting it.  I

25  think -- well, I mean, I think this is what I would be willing

1   to do, and I don't really care about the language.  If the

2   language is what they proposed, then they would have to live

3   with it, that's what you've requested.  If it is -- you know,

4   we got to put hash marks, that seems to be going a little bit

5   farther than anybody has suggested.

6            But, I mean, it could say specifically that, all of

7   them could say, Which of these acts, if any -- or it would

8   have to say, Which of these acts -- you know, mirroring some

9   of the language of the instruction, you know, are associated.

10  And that would be, of course, only if we get to that

11  eventuality.

12           What I'll do at this point, Counsel, is if you want

13  to propose special interrogatories, I don't have to have that

14  at the beginning, we're not going to reference that in any way

15  unless we need that.  Send me it, we'll circulate it and talk

16  about that further.  But it's not going to go on this as to,

17  you know, Sub A under 1.

18           MR. REED:  Your Honor, I'm assuming that the Court

19  takes the position that --

20           THE COURT:  Mic, please.

21           MR. REED:  -- that because the circuit says you don't

22  have to have special verdict forms, means that giving special

23  verdict forms is improper.

24           THE COURT:  No, I'm not -- I did the exact opposite.

25           MR. REED:  Because that's kind of what I'm hearing

2982

1   from the other side of the table.

2          THE COURT:  I don't think so, but I don't know that

3   ultimately.  I'm just concerned about confusion on this

4   verdict form.

5          MR. REED:  I understand.  And one of the things I do

6   agree with government counsel is -- is that all three of these

7   defendants don't sit in the same place.

8          THE COURT:  I agree with that as well.

9          MR. REED:  And I don't have any interest in arguing

10  on their behalf and they have no interest of arguing on mine,

11  but I do tend to agree with that general statement, they're

12  not all in the same place.

13          And I have not figured out a way to -- to deal with

14  the question of a special verdict form that -- that dealt with

15  everybody the same way.  So I'm not sure how to deal with

16  this, and I've been struggling with this since I got this case

17  because I know he has no VICARs, which if you have VICARs at

18  the end of the day, the circuit can go, Well, what are these

19  if they're not that?  So you don't get to argue that.

20          THE COURT:  Uh-huh.

21          MR. REED:  But Mr. Stinson is, at least in my

22  experience, unique in that respect.  But I'm not sure how to

23  deal with the question of verdict forms that -- that will

24  solve all problems.

25          THE COURT:  Yeah, that's why I have three.  Because

1  you're right, you know, it's different, everybody's different.

2  And if you don't want to do that procedure I've talked about,

3  that's no problem for me, either.  So that's the way I

4  think -- feel like it should be left at this time.  And if

5  that's wrong, then that's to the advantage of the defense too.

6        All right.  Any other issue about the verdict form?

7  If you're going to propose that special interrogatory to the

8  jury, I do need to have that right away so that we can have

9  some discussion about that probably on Tuesday.

10        MS. DE SALES BARRETT:  Yes, Your Honor.

11        THE COURT:  All right.  Anything else on the verdict

12  form?

13        MR. REED:  No, not on the verdict forms.

14        THE COURT:  All right.  Instructions, then.

15        MR. REED:  I think the Court's instruction did not

16  include the limiting instruction that --

17        MS. DE SALES BARRETT:  What instruction are you

18  talking about, Mr. Reed?

19        MR. REED:  Court's instructions.  Jury instruction --

20        MS. DE SALES BARRETT:  Oh.

21        MR. REED:  -- did not include the limiting

22  instruction that the Court gave during the trial itself.

23        And I think it should be readdressed at the end.

24        THE COURT:  So there is the instruction that when --

25  when evidence was introduced for a limited purpose, it can be

1  | considered only for that limited purpose.

2  |        It does also instruct them that they must consider

3  | the defendants individually.  I don't think that instruction

4  | needs to be repeated.  But you, obviously, do think so.

5  |        MR. REED:  Yes.

6  |        THE COURT:  And that -- Ms. Stokman, do you have

7  | comments about that?

8  |        MR. REED:  One of the reasons I take that position is

9  | because the jury instructions of when the Court gives the law

10 | on the case, and this -- and that is the law on the case as to

11 | that issue.

12 |        MS. STOKMAN:  And, Judge, I don't think there's a

13 | problem, because the Court did read that out, but the limiting

14 | instruction, I think, is important as well.  Or in addition,

15 | if there's the instruction that the government proposed that

16 | goes to all three defendants.

17 |        THE COURT:  All right.  So let me understand.  You're

18 | saying you don't have a problem with me giving them that

19 | instruction again.  What I can do is that and --

20 |        MS. STOKMAN:  Yes.

21 |        Yes, as far as that.  There were some others that we

22 | found were missing, as well, but I won't go to those yet.

23 |        THE COURT:  But as to that, you're saying you don't

24 | have a problem with me giving the limiting instruction I gave

25 | during trial and leaving it at that, or are you saying you

1  want your limiting instruction too?

2          MS. STOKMAN:  I think it would be more appropriate

3  for the government's limiting instruction.  The Court did give

4  the one specific to Mr. Stinson at trial and during -- or

5  after the evidence that came in, but the limiting instruction

6  regarding -- that would cover all three defendants in that

7  same scenario, if that scenario existed, I think is

8  appropriate.

9          THE COURT:  Further comments by anyone else?

10          MS. DE SALES BARRETT:  I want to see what the

11  government is talking about.

12          THE COURT:  Okay.  I'm trying to pull it up.

13          It's -- it's at Docket 1770 and Mr. Reed's was

14  Docket 1769.

15          MS. DE SALES BARRETT:  Unfortunately, I'm going to

16  unreadable content now.

17          THE COURT:  Sure.  So what Mr. Reed requested and

18  what I read was the model instruction including, you know,

19  1.11.  And then it said:

20          "The testimony you just heard concerning Mr. Eversole

21              and the interview that occurred in South Carolina may

22              be considered only for the limited purpose of

23              Mr. Eversole's receipt of a letter from defendants in

24              this case in 2023."

25          MS. STOKMAN:  And, Judge, I'm sorry.  I think I

2986

1  misheard the Court.  Can you point me to the Court's

2  instructions where there was a reference to a limiting

3  instruction?  I want to -- I just want to look at that before,

4  because I think I misunderstood that that already existed and

5  what that looked like.

6          THE COURT:  It is -- it's Instruction Number 7,

7  paragraph 3.

8          MS. STOKMAN:  I think that covers it, reading the --

9  reading the Court's addition, When I instruct you -- when I

10 instruct you to consider certain evidence.

11         I mean, if Mr. Reed would like the Court to add, When

12 I instruct or instructed you, that would be sufficient as

13 well, because that instruction did go out during the course of

14 trial.

15         MR. VILLA:  And, Judge, for my part, I mean, I think

16 it's also covered by Instruction 4.  To the extent that that

17 was the purpose of the government presenting it, at least in

18 part, I think it would be inappropriate to overly emphasize

19 that, and the instruction the Court gave during trial was

20 sufficient.

21         MS. STOKMAN:  And, Judge, we have an issue with 4

22 anyway, but we can address that when we get to it.

23         THE COURT:  I think isn't there an instruction --

24 there it is -- well, the instruction related to -- oh, let me

25 just pull it up.

1          Yeah, so Instruction 16 also addresses the obligation

2   to consider each person separately.  So then --

3          MR. REED:  Here's the problem that -- and I actually

4   think RICO cases are different, which is one of the reasons

5   that they draw different instructions.  In another part of the

6   RICO instruction on this jury case, the Court is going to say,

7   or the government is going to argue, Mr. Stinson doesn't have

8   to do anything.  If Mr. Stinson is part of the

9   Aryan Brotherhood and he's part of da-da-da Aryan Brotherhood,

10  he can be liable for the two -- you guys call it -- we call

11  overt acts down south, but you guys call it something

12  different up here.

13         There's -- that -- that argument, which is law and

14  true, is inconsistent with the rest of the instructions.

15  Unless you deal with an issue as the Court did in the trial,

16  you cannot consider this evidence against Mr. Stinson for any

17  purpose, up to and including the law that I give you on RICO

18  as to what somebody else did.  That's why it's different.

19  That's why the situation is different, because it's a RICO

20  case.  And RICO cases are just different.

21         So the regular limiting instructions don't work, and

22  arguing and saying something that I did that two or three

23  weeks ago and you must remember that now, my position is,

24  highlighting it is exactly the reason that they have it.  And

25  it's confusing if you don't do that, which is the whole

1  purpose for giving limiting instructions.

2         THE COURT:  Yeah, but in general, limiting

3  instructions given during trial are not repeated at the end.

4  That's why they're given at the time, which was the argument

5  you made at the time, that you can't wait to give this

6  instruction, you got to do now.  And so I did.  But, you know,

7  in general they are not repeated.

8         And what's more, when you look at the language of

9  what you proposed and what I gave, then they'll have to go,

10 Well, wait a minute what is that again?  Because that was a

11 specific incident that, truthfully, I'm not even sure we can

12 articulate which predicate act it could go to.

13        MR. REED:  Well, that's because we don't list the

14 predicate acts, but I get that point.

15        THE COURT:  So then what do you -- you know, how does

16 that bear on any question that the verdict must decide -- that

17 the jury must decide on the verdict form?

18        MR. REED:  It doesn't bear on the instructions

19 themselves.  The instructions -- as the Court knows, it's when

20 lawyers start arguing that we -- that we run -- we run afoul

21 or run up against the law.

22        THE COURT:  Yeah.

23        MR. REED:  And that's where it comes out.  But maybe,

24 you know, I guess they can step into that bear trap and then I

25 can ask the Court to redo it at that point.

2989

1          THE COURT:  Yeah.  Yeah, yeah.  You can do that.

2          MR. REED:  Okay.

3          THE COURT:  All right.  So I'm not going to do that.

4          Let's start at the beginning, then.  I assume there's

5     nothing with 1 through 3.  I understand there's some comment

6     about 4.

7          Ms. Stokman, as to 4?

8          MS. STOKMAN:  Yes.  The government added this

9     instruction in when we gave the proposed jury instructions.

10    This was when Evans Perkins was still a defendant in this

11    case.  The only 404(b) evidence that we had noticed was for

12    Mr. Perkins.  Now he's no longer a defendant and this does not

13    apply.

14         All the acts that have been discussed or -- or come

15    out in evidence throughout the trial that pertain to these

16    defendants are part of the RICO conspiracy.  So this

17    instruction is improper in that respect.

18         THE COURT:  Comments for anyone else on that?

19         MS. DE SALES BARRETT:  Your Honor, I think it's

20    general enough that it doesn't portray any particular acts or

21    exclude any particular acts.

22         THE COURT:  Yeah.  The trouble, though, is line 6 to

23    7 says, You may not consider this evidence as evidence of

24    guilt.  And, of course, that's exactly what they are supposed

25    to do when it's a RICO situation.  At least that's what jumps

2990

 1  out at me initially.  I mean --

 2          MS. STOKMAN:  And again, the government will point

 3  out, this is an instruction that is given when 404(b)

 4  evidence --

 5          THE COURT:  Yeah, it's a 404 question, for sure.

 6          MR. VILLA:  And, Your Honor, I mean, I think there

 7  were -- there was evidence presented outside the conspiracy

 8  time frame, right, including this what we call defense

 9  investigation, the government says, you know, we're trying to

10  find informants to kill or something, because apparently

11  that's what we do.

12          But, you know, there's lots of this information that

13  came after the conclusion of the crimes that -- I mean, parts

14  of our objection were that it was improper 404(b) and the

15  Court overruled that.  But I still think the instruction is

16  appropriate.

17          THE COURT:  Uh, yes and no.  I mean, because the fact

18  that evidence goes beyond the RICO time frame, though, it goes

19  to other issues too.  For example, you know, the impeachment

20  questions that were brought and the bias questions, the

21  benefit questions, this type of information came after,

22  saying, well, wait a minute, are you in fear for your life.

23          That type of thing, which is appropriately done in

24  this case, that is not envisioned that this instruction would

25  apply in that circumstance.  And I don't think the limitation

1   of the -- the up to March of 2023 is -- you know, it doesn't

2   preclude that and it doesn't preclude that from them

3   considering that evidence and evaluating the credibility of

4   the witness.  That's the trouble with that argument.

5            MR. VILLA:  The other issue, Judge, except different

6   argument, you know, all three of these individuals are in

7   prison.  So of course, the jury will infer that they are

8   prison for committing some other crime.

9            THE COURT:  Yeah, except there's an instruction that

10  addresses that as well.  That says, hey, you know, we're not

11  talking about that other stuff.

12           And I wouldn't have given that at all except for, you

13  know, counsel actually introduced the topic, Hey, you know, my

14  clients were in prison -- that was the theme of the defense --

15  how could they have done this?  And I think there was a -- my

16  recollection is at least one opening statement referenced that

17  situation.  But --

18           And the evidence clearly, clearly repeatedly talked

19  about where they were housed.  So there was an instruction

20  that says, you know, the fact that they were convicted of

21  crimes does not bear on it.

22           MR. VILLA:  Which one is that, Your Honor?

23           THE COURT:  Let me see.

24           MR. REED:  I remember that instruction in your

25  evidence that the defendants have --

1          THE COURT:  Number 18.

2          MR. REED:  Oh, there it is.  Yeah.

3          THE COURT:  So I think Ms. Stokman is correct about

4    Instruction Number 4 that should -- I mean, we all know that

5    instruction is -- 404(b), that's the -- that's the comments.

6    That's definitely -- we use that in civil cases and in

7    criminal case as 404 issues.

8          Moving to Number 5, that's just the standard

9    instruction on reasonable doubt.

10          MR. VILLA:  Judge, just so that our record is clear,

11    we maintain our objection to not including 4.

12          THE COURT:  Okay.  Thank you.

13          MS. DE SALES BARRETT:  Mr. Clement as well.

14          THE COURT:  All right.  As to Instruction 5, 5, 6, 7.

15    I'm going to correct or change 7, paragraph 3 to say "when I

16    have instructed you."  Other than that, any objections to 5

17    through 8?

18          MS. STOKMAN:  No.

19          THE COURT:  All right.  Number 9 I struggled with.

20          They were showed the chart of the pictures, so that's

21    what I was thinking of here.

22          MS. STOKMAN:  The government agrees that that would

23    be the demonstrative charts.

24          THE COURT:  Any other -- anyone have any problem with

25    Number 9?

1          MS. DE SALES BARRETT:  No, Your Honor.

2          MR. REED:  No, Your Honor.

3          MR. VILLA:  No Your Honor.

4          THE COURT:  Number -- anyone have comments as to 10?

5          MS. STOKMAN:  Yes.

6          THE COURT:  Okay.  Go ahead.

7          MS. STOKMAN:  Judge, we pulled up the actual model

8    instruction and this instruction is generally given and

9    usually given and it's in the comment to the instruction it

10   lays out when there's a confession, which is a statement to

11   law enforcement.

12         This is not a general statement of defendants'

13   comments throughout the time of a conspiracy or to other

14   co-defendants or witnesses, those are absolutely statements

15   that are part of the evidence.

16         And this -- this instruction goes to statements to

17   law enforcement where there's some sort of issue with the way

18   that statement came out.

19         It addresses that when it said, The circumstances

20   under which the defendant may have made it.  And then the

21   comment addresses voluntariness.

22         And so the government believes that this statement is

23   not applicable here because there was no statement by the

24   defendants to law enforcement that would come under the

25   purview of this instruction.

2994

1          MS. DE SALES BARRETT:  Your Honor, we agree.

2          MR. VILLA:  I agree.

3          THE COURT:  I think you're right.  I just pulled up

4    the comment and it's exactly that.

5          Mr. Reed, do you have any comments about that?

6          MR. REED:  No, I agree.

7          THE COURT:  All right.  I won't give Number 10.

8          MS. STOKMAN:  Judge, can we just on 11 make sure we

9    have the correct -- the Court indicated experts were added.

10         THE COURT:  Yeah.  I added Mendoza and Carpenter to

11   the list, so there should be five.

12         MS. STOKMAN:  And then the chemist Fracia Martinez.

13         THE COURT:  Okay.

14         MS. STOKMAN:  And Terrence Pell was not designated as

15   an expert.

16         THE COURT:  Okay.  So we'll just delete Mr. Pell, add

17   Ms. Martinez.

18         MS. STOKMAN:  So there should be five total still.

19         THE COURT:  Okay.  So I think Number 12 is not

20   needed.

21         MS. STOKMAN:  Government agrees.

22         MS. DE SALES BARRETT:  Agree, Your Honor.

23         THE COURT:  Number 13 is just the standard

24   instruction.

25         MS. DE SALES BARRETT:  Your Honor, with regard to

2995

1    Number 13, the -- actually, paragraph after the list, we

2    object to that paragraph.  This seems to me to be leaning

3    toward the government's arguments about credibility of

4    witnesses and we believe that it is not an appropriate

5    instruction.

6            THE COURT:  All right.  They were instructed on this

7    at the onset of the case.  This is just the typical

8    preliminary instruction.  This is the model instruction.  It's

9    exactly the model instruction.  And to the extent that the

10   Court is ever on the -- state of the art on anything, this

11   reflects what is the current state of understanding of memory.

12           I mean, most courts give a pretty significant memory

13   instruction that I've not found necessary up to this point.

14           Any other comments about Number 13?

15           MS. STOKMAN:  No.

16           THE COURT:  Mr. Reed, any comments?

17           MR. REED:  No.

18           THE COURT:  Oh, I'm sorry.  I thought I was -- I'm

19   going to give this instruction.  It's -- I understand what

20   you're saying that when a witness says something different

21   from somebody else, then they should consider that as for

22   purposes of credibility, which I believe is encompassed in

23   that instruction as well, so I'm going to overrule that

24   objection.

25           As to Instruction 14, it does seem to me we should

2996

1    include Mr. True.  Did I miss anyone else?

2          MS. STOKMAN:  Yes -- well, not missed, but Rubin's

3    first name is Daniel, not Brian.

4          THE COURT:  Oh, all right.

5          MS. STOKMAN:  But otherwise, with the addition of

6    Timothy True, the government agrees with the instruction.

7          THE COURT:  Anybody else, comments on 14?

8          MS. DE SALES BARRETT:  No, Your Honor.

9          THE COURT:  And then also --

10         MR. VILLA:  No, Your Honor.

11         THE COURT:  Then also on 15, I need to put Daniel

12    instead of Brian?

13         MS. STOKMAN:  Yes.

14         THE COURT:  And add True.

15         MS. STOKMAN:  Also, there are some changes here that

16    government believes are appropriate.

17         THE COURT:  All right.

18         MS. STOKMAN:  So in the first paragraph, it should be

19    Brandon Bannick and James Field.

20         THE COURT:  Oh, yeah.

21         MS. DE SALES BARRETT:  Agree.

22         MS. STOKMAN:  The second paragraph, Mr. Rapinoe and

23    Mr. Rubin did not get favored treatment.  Instead, in the

24    government's proposed instruction which was Number 15 when we

25    submitted them, there is a paragraph about a witness who

1  received compensation, which would more appropriately apply to

2  Mr. Rapinoe.

3          THE COURT:  I think, though, the evidence on that is

4  a little bigger, because there was a lot of questioning about,

5  hey, you weren't prosecuted.  You know, you've committed

6  what -- I don't know, but at least arguably could be crimes

7  that -- for which he has not been prosecuted, in particular,

8  in federal court.  And I don't know that the elements of those

9  offenses have been detailed, but at least that was the

10  argument.

11          MS. STOKMAN:  But Judge, there's no agreement to

12  that.  There was no immunity on those witnesses for that.  I

13  mean, that is not something that played a factor as far

14  as -- so Ms. Chandler is different because she has the letter

15  of immunity, that makes sense.

16          The other two and also Timothy True -- well, no,

17  Timothy True we believe also the letter would be -- he would

18  be added to that second paragraph.

19          But for Mr. Rapinoe, it should be the compensation

20  paragraph that the government did put into our proposed

21  instruction regarding this and Daniel Rubin did not receive

22  any favor treatment.

23          And for the speculation to be that the government

24  could have charged and they didn't charge or they're not -- I

25  mean, that's just a lot to go into this when that -- there's

1   nothing in the record that would indicate decisions made or if

2   pending charges come in the future.

3          THE COURT:  All right.

4          MS. DE SALES BARRETT:  Your Honor --

5          MR. VILLA:  Judge --

6          MS. DE SALES BARRETT:  -- if I may, with regard to

7   the argument that the witnesses agreed when they were asked

8   those questions.  Obviously, they agreed that -- that they

9   could have been charged, and they weren't charged.  And that

10  is clearly favorable treatment.

11         THE COURT:  The trouble with them agreeing is,

12  what -- I didn't hear the elements of the offenses set forth

13  and the fact that they have this belief is certainly

14  important, but I didn't hear, I'll tell you, I didn't really

15  hear sufficient evidence on any of them that says, oh, yeah,

16  we're going to go file a charge today because there's evidence

17  of it.

18         I didn't hear that, but I do appreciate that's a

19  different issue than do they believe they received something.

20  I guess the question does --

21         MR. VILLA:  I mean, Your Honor, I think they admitted

22  to doing stabbings, violence, EDD fraud, drug dealing --

23         THE COURT:  Right, but --

24         MR. VILLA:  -- drone drops, things like that on

25  behalf of the Aryan Brotherhood.  That's a federal

1   racketeering crime that they confessed to on the stand and
2   they're not being charged.
3           THE COURT:  Well, it's just not simply -- it's not
4   that simple.  You know, it's not them, I stabbed because
5   somebody told me.  You know, there would have to be -- I mean,
6   I'm not saying there's not a potential.  I'm just saying that
7   it can't be charged and there's no -- it couldn't be charged
8   today on what we've heard so far, and this instruction reads
9   like it's an established fact.
10          So I'm just trying to --
11          MR. VILLA:  Well --
12          THE COURT:  Wait a minute.  I'm just trying to noodle
13  out, should it go here, should it go someplace else, should
14  the language be changed in some way.  Because it is an
15  established fact as to, you know, paragraph 1 as to the
16  others.
17          And I agree Mr. Rubin is probably something we should
18  talk about, because they did receive concrete indisputable
19  benefits.
20          So when it's something else, when it is a credibility
21  as opposed to an absolute without a doubt benefit, does it --
22  does it belong here?
23          And clearly, Mr. Rapinoe should be as to
24  compensation, but if there's a slightly different issue, I
25  don't think we can say it's been established that Mr. Rapinoe

1    could be prosecuted and is not going to be as a result.

2    Because we don't know any -- we don't have any evidence of

3    that.

4            MS. STOKMAN:  And Judge, I think I'll remind the

5    Court that Mr. Rapinoe and Mr. Rubin both when they were asked

6    that question, you know, you didn't -- you're not going to get

7    charged, in their own way, they both basically said, I hope

8    not.

9            I mean, that was the response.  So that does not

10   indicate they believed that testifying would actually cause

11   them to be -- to avoid charges.

12           In fact, Mr. Rubin waived immunity when he testified

13   in the grand jury.  I mean, there were -- there were steps

14   along the way that indicate that they are not aware whether or

15   not they -- I mean, if they -- they can be charged from their

16   testimony, and I think that the Court is correct, it doesn't

17   establish that they are coming up here, they're hopeful, but

18   that is not what -- there's no agreement on that.  There's

19   been no decision on that as far as they're aware.

20           And so the government does not believe for those two

21   in that paragraph that that's appropriate.

22           MR. VILLA:  Judge --

23           THE COURT:  Let me just back up.  You said that

24   Daniel Rubin testified with immunity.  I'm sorry.  Did I miss

25   that, or was that not introduced?

1          MS. STOKMAN:  It was not introduced, but I'm letting

2     the Court know he waived immunity for even his grand jury

3     testimony.

4          MS. DE SALES BARRETT:  I would object to the Court

5     considering anything outside of the scope of the evidence --

6          THE COURT:  Well, that would be interesting if I was

7     making any factual determinations in this case, which I'm not.

8          So I just want to know if he's waived it and there

9     was evidence, then I think that we would put that in, but

10    there's not.

11         So, Mr. Villa --

12         MR. VILLA:  Judge, the operative word is "favored

13    treatment."  So we're not talking about you will not, have

14    not, and you're never going to be charged.  It's just, Did you

15    get favored treatment?

16         And not getting charged as of today is favored

17    treatment.  I mean, if the government wanted to put on

18    evidence in response that, Well, actually, we're thinking

19    about that, and we're conducting an investigation right now

20    into that, you know, then maybe we have a different situation.

21    But the only evidence the government -- or the jury heard is

22    that they've committed these crimes for which the federal

23    government has not yet today charged them.

24         And the question is:  Is that favored treatment.  I

25    mean, we're not talking about concrete, You are not going to

1    be charged.  Just favored treatment.

2           THE COURT:  The trouble is everybody else in that

3    paragraph have concrete indisputable favored treatment.

4           MR. VILLA:  And that can be dealt with in argument by

5    the parties.

6           THE COURT:  Yeah, except you're asking me to tell the

7    jury that they have received it.  Instead what it is is

8    argument that they have received it.

9           Because the jury will decide whether or not they have

10   received it.  Because the fact that they say, Yeah, I hope I'm

11   not being charged, the questions suggest, Yes, I've committed

12   federal crimes.

13          Although, I mean, I was concerned at the time, I

14   don't think they have any sort of expertise to say that.  And

15   one guy -- one witness even said, Well, you know, that's -- I

16   think he said, That's above my food chain, or something like

17   that.

18          So it's not that they have any legal expertise to

19   say, Yeah, I committed a federal crime.  They certainly think

20   they did something that the law doesn't allow.  But I think

21   that that's the trouble with what we're dealing with is you're

22   telling -- you want me to tell the jury they received it as

23   opposed to them deciding.

24          MS. STOKMAN:  And, Judge, I'll also point out that

25   the beginning of that last sentence says their testimony was

1   "given in exchange for," which implies a contractual agreement

2   of sorts like a plea agreement, cooperation agreement,

3   immunity letter.  And that didn't exist for those two

4   witnesses.

5            MS. DE SALES BARRETT:  Your Honor, Mr. Rapinoe

6   testified that he entered into a cooperation agreement with

7   the government in return for his cooperation in San Diego

8   which led to his cooperation in this case.  So --

9            THE COURT:  I know he said that, but then he also

10  said he didn't.  And he said it was -- I mean, I don't know.

11  He was all over the map on what exactly he did.  And so --

12           MS. DE SALES BARRETT:  Well --

13           THE COURT:  And we know for a fact he didn't testify

14  here in exchange for any cooperation agreement with the

15  government in this case.  We know that.  And this suggests

16  that he did.

17           MR. REED:  The -- the --

18           MS. DE SALES BARRETT:  It doesn't -- all it says is

19  that you've heard testimony that --

20           And, you know, it is -- it is not saying that the

21  testimony was true or it was not true.  It's just saying that

22  a witness in those circumstances, his testimony should be

23  viewed with greater caution than an ordinary witness.  And

24  that's not controversial at all.

25           THE COURT:  Except, again, lines 9 and 10 does say

3004

1    specifically that it was given in exchange for favored

2    treatment.  And, I mean, Mr. Rapinoe will be included.  I

3    think absolutely it relates to the compensation issue.

4         But Mr. Rubin, I don't think there is evidence that

5    he -- he testified in exchange for.

6         But I -- I mean, I'm not saying that you can't have

7    some other sort of instruction somewhere, but I need to know

8    where it is.  Because this -- clearly this instruction is

9    designed for those people who've got concrete arrangements

10   with the government, which is different from just credibility

11   issues.

12        Unless you see something differently from the

13   Ninth Circuit, that's how I read the comments.

14        MS. DE SALES BARRETT:  Your Honor, with regard to

15   that, in terms of this instruction, we believe that there

16   should be a paragraph with regard to the admission by these

17   individuals that they were accomplices in Count 1.  Each one

18   of them testified that they were participants in the

19   Aryan Brotherhood enterprise during the period of this

20   indictment.

21        So there should be a separate paragraph that includes

22   all of those individuals who testified that they themselves

23   were members of the Aryan Brotherhood and -- excuse me -- and

24   committed crimes on behalf of the Aryan Brotherhood.

25        So we would submit that a section -- a paragraph

1  should be added listing all of those individuals and

2  Lana Haley as -- because they admitted -- all of them, each

3  one of them admitted committing crimes, from their

4  perspective, on behalf of the Aryan Brotherhood.

5          THE COURT:  All right.  Any other comments?

6          MS. STOKMAN:  The government disagrees with that, and

7  that is not where -- the true meaning of that is in

8  paragraph 1 when it comes to Brandon Bannick and James Field.

9          Additionally, I'll point out that when we were

10 eliciting statements from Ms. Haley, it was defense's position

11 that she was not a coconspirator, and thus, they believed we

12 shouldn't be eliciting coconspirator statements.

13         So even though -- I know that the government does not

14 believe any of the accomplice argument should be in here --

15 that is not the purpose of this -- except for the first

16 paragraph, but I will point that out as well.

17         THE COURT:  I think in truth, though, at least to the

18 extent if we add the accomplice language, Brandon Bannick and

19 Mr. Field, probably Mr. Eversole, they've been convicted.  I

20 don't think in the -- I don't think that that -- I mean,

21 they've been convicted directly, not as accomplice liability.

22 So I don't think that makes sense.

23         As to --

24         MS. DE SALES BARRETT:  Excuse me, Your Honor, but

25 Mr. Field -- they have been convicted.  For instance,

1    Mr. Bannick pled guilty as an accomplice to the Lomita

2    killing, if you accept his version of it.

3         THE COURT:  Well, I don't know what he said.  I

4    mean -- I mean, I do know what he said, but I took his plea.

5    His plea was straight up to the count.

6         MS. DE SALES BARRETT:  Right.  But you can plead

7    straight up to that count without specifying whether you're a

8    principal or --

9         THE COURT:  Right.

10        MS. DE SALES BARRETT:  -- an accomplice because the

11   liability and the punishment is identical.

12        THE COURT:  Right.  So your point is that I should

13   adjudicate that differently based upon his testimony here or

14   just that he pled guilty to being -- I mean, it could go

15   either way.  It could go a lot of different ways.

16        MS. DE SALES BARRETT:  I'm saying he testified that

17   he -- he testified that his role in that was as an accomplice.

18        THE COURT:  There is an instruction, though, that

19   deals with the fact that they've been convicted of these

20   felonies and how that bears on their believability.  What

21   you're suggesting overemphasizes that for sure, and I'm not

22   going to do that.

23        As to the others -- actually, I think all of them

24   have admitted except for Kaylen Chandler.  And actually, she

25   has immunity.  The rest of them have all admitted their felony

1   convictions related to the AB, and they are -- the jury is

2   entitled to consider that for purposes of their credibility,

3   and that instruction is given.

4          At this point, I'm not going to change -- I'm going

5   to delete Mr. Rubin from paragraph 2.  I'm going to add

6   Mr. Rapinoe compensation language proposed by the government

7   and --

8          MS. STOKMAN:  He should be deleted from that

9   paragraph as well.

10          THE COURT:  -- and delete him from paragraph 2, add

11   his own paragraph for him in particular.

12          Let me pull up the language of that.  Does everyone

13   have the government's proposed instruction in that regard?

14          MS. DE SALES BARRETT:  Mine disappeared, Your Honor.

15          MR. VILLA:  What's the docket number?

16          THE COURT:  It -- I don't know.  Let me pull it up.

17          MS. STOKMAN:  And I can read it into the record as

18   well.

19          THE COURT:  It's Document 1618.

20          MS. STOKMAN:  It was -- I'm sorry.

21          THE COURT:  Oops, I'm sorry.  I'm looking at the

22   verdict form.

23          MS. STOKMAN:  I don't have the PACER number, but it

24   was Instruction 15 in what we did file.

25          MS. DE SALES BARRETT:  I guess we're trying to look

1   it up on PACER.

2           THE COURT:  It looks like it's 1616.

3           MS. DE SALES BARRETT:  Okay.  Yes, Your Honor.

4           MR. VILLA:  What was the number again?

5           THE COURT:  It's the docket --

6           MR. VILLA:  No, not the docket number, the

7   instruction number.

8           THE COURT:  15, she said.

9           MR. VILLA:  Thank you.

10          MS. STOKMAN:  Page 21.

11          MS. DE SALES BARRETT:  Page 21 of the government's

12  proposed instructions.

13          MS. STOKMAN:  The second -- there's two.  There's a

14  second proposed.  And I don't know if it's the same page

15  number on the first one, but we filed a second -- like a

16  minute -- an amended.  So I'm looking at that one.

17          THE COURT:  Yeah, that's not 1616.

18          MR. REED:  Does the Court have some other place it

19  intends to put Mr. Rubin?

20          THE COURT:  Mr. --

21          MR. REED:  Rubin.

22          THE COURT:  Well, not really, because there's no

23  evidence that he had any sort of formalized agreement.  And he

24  would just go with he's been convicted of felonies and 609s.

25          MR. REED:  Except that Mr. Rubin admits that he was

1    an associate of the very RICO conspiracy that these guys are

2    being charged in, so he is an accomplice.

3          I recognize that the fed does not treat accomplices

4    exactly the same way as the state does requiring cooperation,

5    but accomplice testimony is inherently unreliable.  I think

6    the nature of that applies to the Ninth Circuit as well as

7    California.  And he is clearly an accomplice.  He's testified

8    to that.

9          THE COURT:  This Instruction Number 15 now --

10          MR. REED:  No, I'm not saying that it applies to this

11    instruction.  What I'm asking, is there some other place where

12    the Court is going to deal with Mr. Rubin, or is he -- does he

13    get on the witness stand with sackcloth and ash and he's

14    suddenly the same as Mendoza or someone else?  I don't think

15    that would be the case.

16          THE COURT:  What are you proposing, Mr. Reed?

17          MR. REED:  I'm not sure.  And that's -- that's my

18    question.  Because if you're going to take him out altogether,

19    then I will have a valid -- I'll have to come up with an

20    answer.  If you're going to put him someplace else, then

21    that's different.

22          MS. DE SALES BARRETT:  (Inaudible).

23          THE COURT:  I'm sorry?

24          MS. DE SALES BARRETT:  Accomplice, he does testify as

25    an accomplice.

1          THE COURT:  The trouble -- gotcha.  Hear it.  It

2     doesn't belong in 15.  If you've got some proposal, I'd like

3     to hear that, but it doesn't belong in 15.  Because accomplice

4     here suggests adjudication or formalized determination.

5          What you're suggesting is I adjudicate him now based

6     on the evidence presented, and that's not what Instruction 15

7     relates to.

8          MR. REED:  I concede that point.  I'm just trying

9     to -- if it doesn't fit in 15 and there's no other place, then

10    I will make some -- try to figure out someplace where I think

11    it goes.

12         MS. STOKMAN:  There's -- I mean, there's a

13    credibility instruction that we've already given and the Court

14    has addressed today again.  And although that never names

15    every witness, counsel generally tends to use that to argue

16    credibility, and there are factors in that instruction already

17    that would cover this issue.

18         MR. REED:  We don't argue that for accomplices,

19    Counsel, but I understand your point.

20         THE COURT:  Well, yeah, but again, I would rather not

21    talk about the legal concept or the legal conclusion that

22    you-all are drawing.  It may be that on credibility you add a

23    proposed modification that says the extent of the involvement

24    of the witness in the acts charged, something like that.

25         But I'm -- I'm having trouble finding your

1  instruction.  It does not appear to be in 1616 at page 21.

2  Oh, it's at page 12 of 1616.

3         Finally you've heard testimony from Brian Rapinoe,

4  who received compensation from the government in connection

5  with this case.  That's the language that was proposed.

6         MS. STOKMAN:  That came right from the model

7  instruction.

8         MS. DE SALES BARRETT:  No objection, Your Honor, to

9  that -- to adding that.

10        THE COURT:  Got it.

11        MS. DE SALES BARRETT:  We still have our objections

12  as already stated in this particular charge.

13        THE COURT:  All right.  Anything else?

14        MR. VILLA:  Mr. Johnson joins those objections.

15        MS. DE SALES BARRETT:  And Mr. -- is Mr. True's name

16  being added to any --

17        THE COURT:  Yes.

18        MS. DE SALES BARRETT: -- place here?  Okay.

19        THE COURT:  Yes.  All right.  Moving on to 16.

20        Any objections to 16?

21        MS. DE SALES BARRETT:  No, Your Honor.

22        MS. STOKMAN:  No.

23        THE COURT:  17?

24        MS. STOKMAN:  Yes.  The government filed an

25  opposition to the motion in limine that Brandon Bannick filed

1   regarding this instruction.  So we point the Court to the

2   arguments in that.  But this instruction is misleading as it

3   pertains to the first element of Count 1, because that

4   absolutely is something that is required to be found in order

5   to even move to the next elements in the RICO conspiracy.

6         THE COURT:  I took this language and modified it from

7   *Yandell* because it says, Gang membership alone does not prove.

8         MS. DE SALES BARRETT:  Right.

9         THE COURT:  Because the whole point is to say, Look,

10  you know, you may find that they are members of this gang, but

11  that doesn't determine the outcome, it's just the first step,

12  in essence.

13        I mean, we could tighten that up a little bit more,

14  but I thought the alone part was enough.  I mean, I thought

15  what *Yandell* gave, I think that's not correct, but I deleted

16  out what I thought was incorrect.

17        MS. STOKMAN:  And perhaps, then, if the Court is

18  inclined to keep this, there is a continuing line somewhere

19  that says, uh, something about the elements -- you know, if

20  there's an element of the RICO charge, then those all have to

21  be found, so that they know that that's part of an element of

22  the conspiracy of Count 1 and --

23        THE COURT:  I mean, Count 1 says you have to be a

24  member or an associate.  This just says basically if you find

25  they're a member.  It doesn't address associate.  But --

1          MS. DE SALES BARRETT:  Your Honor, may I address

2     that?

3          THE COURT:  Yeah.

4          MS. DE SALES BARRETT:  First of all, it doesn't --

5     the element in Count 1 is that the Aryan Brotherhood is a

6     continuing criminal enterprise.  It is -- the name

7     "Aryan Brotherhood" has nothing to do with the element of the

8     offense.  And what this -- and what this instruction says is

9     that just because somebody is in the Aryan Brotherhood doesn't

10    mean that they have entered into a criminal conspiracy as

11    defined in this case.

12         So I think nothing needs to be added to this, this

13    states the law as it stands.  Gang membership alone is not

14    sufficient to prove any element of a racketeering offense.

15         MR. VILLA:  And, Judge, I would just add it doesn't

16    have to be a gang for the government to be able to prove it's

17    a racketeering enterprise.  So I think it --

18         MS. DE SALES BARRETT:  Right.

19         MR. VILLA:  -- stresses the specific concerns we have

20    about unfair prejudice for being a member of a gang.

21         MS. STOKMAN:  The government's position is that it's

22    unnecessarily confusing when they have to find all elements of

23    the RICO conspiracy, not just the first element that

24    requires -- or first or second element that requires --

25         MS. DE SALES BARRETT:  But you could substitute

1    Coca-Cola Bottling Company for Aryan Brotherhood in a RICO

2    conspiracy if that were the case.  It is just simply the name.

3    And that's -- that's the problem here.

4            MS. STOKMAN:  But that is the gang we're talking

5    about in the RICO conspiracy, so it --

6            THE COURT:  We're not going to put Coca-Cola, but

7    when I look at Instruction 22, there is not a requirement that

8    they find that they are a member of the Aryan Brotherhood or

9    the enterprise.  What it says is:  The enterprise did this,

10   there was an agreement to conduct the business of the

11   enterprise, they became a part of the conspiracy of the

12   enterprise and, you know, knew that the members of the

13   conspiracy would do this.

14           It doesn't say you have to find that they were a

15   member or an associate or any sort of -- it just says:

16           "The indictment alleges that the enterprise is the

17            Aryan Brotherhood, including its leaders, members,

18            and associates."

19           MS. STOKMAN:  Judge, I'll also note that in the VICAR

20   instructions, they have to maintain membership, so there's --

21   just pointing that out that it's the government's position

22   that this is a little confusing when the elements of the

23   offenses charged do require some sort of association or

24   membership or continuing association or membership.  And

25   again, we're asking them to find each element of the crime,

 1   which requires more than just to be a part of it.

 2         MR. REED:  I think when you read 17, 21, and 22

 3   together, they actually are harmonized and they all speak to

 4   membership in the criminal partnership or in the conspiracy or

 5   the enterprise, they do not say "the gang."  And to say

 6   anything -- in fact, I would be very surprised if you could

 7   get away without giving 17.  If you give 21 and -- I just

 8   think that 17 makes it clear that being in the

 9   Aryan Brotherhood is not the element.  It's the other -- it's

10   what 21 and 22 require.

11         MS. DE SALES BARRETT:  Well, and, Judge, and I would

12   add to that we have objections to -- to including the name

13   "Aryan Brotherhood" in the numbered paragraphs of --

14         THE COURT:  Well, you do that and then we definitely

15   can't have Number 17.  If you take out the Aryan Brotherhood,

16   then we can't have --

17         MS. DE SALES BARRETT:  No, it still appears in the

18   first paragraph:  As alleged in the indictment that it's the

19   Aryan Brotherhood.  If you want to say:  Here, as alleged in

20   the indictment, the indictment alleges that it's the

21   Aryan Brotherhood, that's different.  But here, this is a

22   conclusion that the Aryan Brotherhood is the enterprise.  And

23   that is not the law.

24         MS. STOKMAN:  It's the enterprise that the indictment

25   lays out, which absolutely is needed to explain what charges

1  and elements of those charges the jury is being asked to

2  decide on.

3          MS. DE SALES BARRETT:  And that's argument.  That's

4  their position.  That's the -- that's what the indictment

5  says.  It's not what a jury charge -- what a jury should be

6  told with regard to elements of the offense.

7          THE COURT:  All right.  Looking at 17, I think to

8  address the concerns, what I'll say is, Gang membership alone

9  without more does not prove blah, blah.

10         MS. DE SALES BARRETT:  I have no objection to that,

11 Your Honor.

12         THE COURT:  And then next line, As a result, you must

13 not infer from the alleged gang membership alone without more.

14         And I'll do that.

15         Moving on to Instruction 18, this is the same 609

16 issue.

17         MS. STOKMAN:  Judge, we only point out that it's

18 missing a title, but --

19         THE COURT:  Yeah, well, they don't get titles anyway,

20 so --

21         19, on or about, any objection?

22         MS. DE SALES BARRETT:  No, Your Honor.

23         MS. STOKMAN:  No.

24         MR. REED:  Your Honor --

25         MR. VILLA:  No, Your Honor.

3017

1              MR. REED:  (Inaudible).

2              THE COURT:  I'm sorry, what?

3              MR. REED:  Does the jury get numbers?

4              THE COURT:  Yeah, they get numbers for reference, but

5    they don't get the title, we delete out the title, because

6    it's --

7              MR. REED:  They get renumbered, because I think --

8              THE COURT:  Yeah, they'll get renumbered.

9              MR. REED:  So these numbers will not stay these

10   numbers?

11             THE COURT:  Correct.  You'll get a revised set.

12             MR. REED:  Thank you.

13             THE COURT:  Number 20, knowingly.

14             21, conspiracy.

15             22, RICO conspiracy.

16             MS. STOKMAN:  Judge, this is one that the government

17   had a different proposed instruction.

18             This -- we understand this is the Ninth Circuit model

19   instruction, but we believe that this is a very confusing and

20   duplicative instruction that doesn't clearly spell out the

21   elements.  And, for example, this instruction has a four --

22   proposed four-element formulation, the one we gave has five

23   elements.  We believe it clearly defines the elements that are

24   required for the RICO conspiracy.

25             And just so the Court knows, we consulted with the

3018

1    racketeering office in DC and made sure that the proposed

2    instruction that we gave did not discount any Ninth Circuit

3    precedent or something that -- it only makes the Ninth Circuit

4    instruction clearer and more appropriate to the law that

5    exists under the RICO conspiracy statute.

6             THE COURT:  I've looked at that.  I'm having trouble

7    putting my hands on it.

8             That's, again, in 1616?

9             MS. STOKMAN:  Judge, I think -- so I don't know if I

10   was correct on the number as it pertained to the 1616 as far

11   as the government's instructions.

12            But in the most recent instructions filed by the

13   government, proposed instructions, it was under the

14   Instruction Number 24.

15            MS. DE SALES BARRETT:  Page?

16            MS. STOKMAN:  In the version I'm looking at, it's

17   page 32.

18            MR. VILLA:  That's not 1616?

19            THE COURT:  In 1616, it looks like it's page 23.

20            MS. DE SALES BARRETT:  Okay.

21            THE COURT:  Now, see, I went over this and I thought

22   that the charged enterprise, the Aryan Brotherhood, was or

23   would be established.

24            MS. STOKMAN:  That is correct.

25            THE COURT:  So that kind of addresses, I guess, what

1    Ms. Barrett was saying is that that's a fact to be determined

2    by the jury, whether the Aryan Brotherhood was established and

3    then whether it engaged in this conduct.

4            MS. STOKMAN:  Which is, yes, and in our proposed it

5    is part of the element which is required for them to find

6    unanimously.

7            MS. DE SALES BARRETT:  Our position is, Your Honor,

8    that the Ninth Circuit instruction is appropriate, but

9    without, as I said before, mentioning the Aryan Brotherhood in

10   paragraphs 1 and 2 -- numbered paragraphs 1 and 2.

11           MS. STOKMAN:  The government opposes that, as it does

12   state the indictment alleges, which is exactly what is

13   required.

14           MR. VILLA:  It seems the Court's proposed one covers

15   what the government's trying to establish, is that there was

16   an enterprise.

17           THE COURT:  Well, except they're also seeking to make

18   the jury determine that there was an enterprise.  What I've

19   listed and what you seem to be agreeing to is conceding that

20   the enterprise existed.  So I guess I'm kind of hearing it two

21   different ways from the defense.  I don't quite know how you

22   want to do that, then, what your -- what your position is in

23   truth.

24           MR. VILLA:  You're saying Court's first element?

25           THE COURT:  It assumes.  It doesn't ask for a

1  finding.

2       MR. VILLA:  It seems to me it does, but I -- I mean,

3  I guess I could be corrected.

4       I mean, I agree the parenthetical here, the

5  Aryan Brotherhood, should be taken out.

6       THE COURT:  I mean, when you look at the model

7  instructions, it's -- under 1962(c), for example, it says

8  specified enterprise or union.

9       MR. VILLA:  Which it specified in that first

10  paragraph.

11       THE COURT:  I'm just looking at the model

12  instruction.  Actually, you know, we probably should just go

13  ahead and take a break now and let's come back in about

14  15 minutes, five minutes after, and we'll go further at that

15  time.

16     (Recess held.)

17       THE COURT:  All right.  We have everyone back.

18       In looking at this again during the break, it looks

19  like the government's instruction seems consistent with what

20  we're asking next and instructing next, and that is what an

21  enterprise is.  It's saying that -- I mean that Instruction 23

22  says that they have to determine that there was an enterprise.

23  And so it makes sense to me to include that as an element.

24  Unless you-all are stipulating that the enterprise existed.  I

25  don't think the defense is doing that.

1        MS. DE SALES BARRETT:  No.

2        MR. VILLA:  No.

3        MR. REED:  No.

4        THE COURT:  Okay.  So I think it should be included.

5   When I look at the government's instruction, what strikes me

6   as the primary difference is there's no dates of the

7   conspiracy.  And I think that should be included.

8        Also, just working off the government's instruction,

9   I think it does make sense, as Ms. Barrett has suggested, that

10  we don't need to keep saying "Aryan Brotherhood" because it is

11  paragraph 1.  The government mentions it just once more, but I

12  think the fact that it's just identified as the enterprise

13  charge system six lines before, I don't think we need that.  I

14  think it should just say, First, the enterprise was

15  established, because there is no evidence that it had not been

16  established.  It either is or it isn't.

17       MS. STOKMAN:  And Judge, the language is "was or

18  would be" for that.

19       THE COURT:  I see that, but there's no evidence that

20  there was some formation happening.  So I think it should be,

21  First, that the enterprise was established.

22       MR. VILLA:  Your Honor, I guess I have concerns about

23  that framework.  I mean, the factual question we want the jury

24  to decide is:  Is it an enterprise, right?  And if that's

25  true, then why don't we just say, if you're going to go along

1    with that, that, you know, first, the Aryan Brotherhood or you

2    know, the charge enterprise is an enterprise.  I don't

3    understand the "was or would be established."  Isn't the

4    question just:  Is it an enterprise?

5         THE COURT:  No, because you look at Instruction 23,

6    it says, "The first element of RICO, the government must prove

7    that an enterprise existed."

8         MR. VILLA:  So then isn't that the question we want

9    the jury to ask?

10        THE COURT:  Well, you mean you don't like

11   "establish"?  You want it to say that the -- that the

12   enterprise existed?

13        MR. VILLA:  Yeah or, you know, it constituted an

14   enterprise or something like that.  I don't -- "was or would

15   be established" doesn't seem to be what we're asking the jury

16   to --

17        THE COURT:  I don't have a problem with saying,

18   First, that the enterprise existed.  That is exactly

19   consistent with the next instruction.

20        And second, or Point 2, is the enterprise, I could --

21   probably should be, I think, beginning at a time unknown

22   like -- the current 22 says, "including the dates of the

23   conspiracy."  And then go into the government's that the

24   enterprise engaged in -- well, no, I think that should be "was

25   or would be engaged in."

1    MS. DE SALES BARRETT:  Yeah, are we talking about the

2    government's second, Your Honor?

3    THE COURT:  We're talking about the government's

4    second but including the language related to the dates from

5    the current instruction, because I think that that should be

6    included.

7    MS. STOKMAN:  Judge, I think the dates would more --

8    I'm sorry -- they would more appropriately go into the third.

9    I'm sorry the dates -- well --

10    Sorry, Ms. Barrett.  You can go.  I'm trying to make

11    sure that they are consistent here, because they are not

12    exactly the same.  So I'll think about that more.

13    THE COURT:  Ms. Barrett, you had comments?

14    MS. DE SALES BARRETT:  I thought there -- no.  I --

15    uh, it looks like Number 2 is the same on the Court's is the

16    same as the second.

17    THE COURT:  I'm sorry.  I meant I renumbered it.  So

18    the current Number 1 has dates included.  So I'm just thinking

19    dates should be included somewhere.  Is it there or is it when

20    the defendants are alleged to have entered into it?

21    MS. STOKMAN:  I think it's more of their knowing --

22    Yeah.  I think, Judge, it could go into the third

23    element where it first describes when there would be

24    agreements in it.  But again, it's --

25    THE COURT:  I think the trouble with doing it there

1    as opposed to the second one, as I understand the indictment,

2    the third superseding indictment, they are talking about --

3    and there's instruction about multiple conspiracies.  And so

4    what they are talking -- what I understand the indictment to

5    say is, this all was happening and then people pop in and out

6    of multiple conspiracies during that time period.

7            MS. STOKMAN:  Judge, that -- we had an issue with the

8    multiple conspiracy, as well, because it is one conspiracy

9    under the racketeering count.

10           THE COURT:  That makes some sense, because --

11           MS. STOKMAN:  Especially when the elements of Count 1

12   lay out more specifics to what each defendant had to have

13   known or been engaged in.

14           THE COURT:  All right.  We can talk about that

15   further.

16           What do you think about dates, Ms. Stokman?  Where

17   do -- you think it should go in 4, point 4?

18           MS. DE SALES BARRETT:  Your Honor, I'm not sure --

19   where are we defining enterprise if you eliminate Number 1 on

20   your instruction?

21           THE COURT:  The next instruction.

22           MS. DE SALES BARRETT:  Pardon me?

23           THE COURT:  The next instruction, look in your

24   package.

25           MS. DE SALES BARRETT:  I think it has to start.

1        THE COURT:  Well, I'm -- we can reorder them.  But

2   the next instruction -- well, actually, though, it makes

3   sense, because it's laying out the elements and then the

4   instructions following go through, Okay, Element 1, here's

5   your instruction; Element 2, here's your instruction.  That

6   actually makes sense to me.

7        MS. STOKMAN:  Judge, we believe that as soon as

8   there's words about knowingly agreeing, it should -- so the

9   third in the government's proposed.

10        THE COURT:  All right.  Any comments about whether

11   the dates should be included for the defense?

12        MR. VILLA:  I think dates should be included.

13        THE COURT:  All right.  Then otherwise, looking at

14   the government's proposed instruction, is there anything else

15   that there's objections to or can we just adopt this one with

16   some formatting changes?

17        MS. DE SALES BARRETT:  Your Honor, can you point to

18   me where we're defining an enterprise?  Where we're saying --

19        THE COURT:  Instruction --

20        MS. DE SALES BARRETT:  -- there was an agreement

21   between two or more persons to conduct and participate

22   directly or indirectly in --

23        THE COURT:  Let me again direct you to the package,

24   Instruction Number 23.

25        MS. DE SALES BARRETT:  Oh.

1          MR. REED:  So this is going to replace 21?

2          THE COURT:  We're working on 22.

3          MR. REED:  22, excuse me.  Okay.

4          THE COURT:  All right.  Moving to 23, that's the

5     enterprise instruction.  I don't think there's even any

6     modification to that.

7          MS. DE SALES BARRETT:  Yes, Your Honor.

8          THE COURT:  Okay.

9          MS. DE SALES BARRETT:  Your Honor, in the second,

10     third sentence, after the word "informal," we believe it

11     should say, "With members or associates who function as a

12     continuing unit."

13          MS. STOKMAN:  Sorry, I didn't hear that.

14          THE COURT:  She said, Associates or members who

15     continue as a functioning unit.

16          I don't think that that's accurate.  I mean, I could

17     see -- I don't have a problem changing "personnel" to "members

18     or associates," but I don't think they have to -- all in the

19     same people have to consider -- have to function as a

20     continuing unit going forward.

21          MS. DE SALES BARRETT:  Doesn't modify "people."

22          THE COURT:  I'm sorry, what?

23          MS. DE SALES BARRETT:  The phrase doesn't modify

24     "people."  That says:

25          "This group of people, in addition to having a common

3027

1          person, must have an organization.  The organization

2          has members and associates who function as a

3          continuing unit."

4          THE COURT:  Where are you reading?

5          MS. DE SALES BARRETT:  Oh, I'm sorry.  I'm reading

6     the one wrong.  Sorry, judge.

7          "This group of people" -- third sentence -- "in

8     addition to having a common purpose, must have an ongoing

9     organization, either formal or informal, with members and

10    associates who function as a continuing unit."

11         That's what we request that it be added, we would

12    repeat, The law requires a finding -- the law requires a

13    continuing unit -- functioning as a continuing unit over time.

14         MS. STOKMAN:  Government's pointing out that the

15    second paragraph does lay out more of what is required and

16    that change should not be added or made to the first

17    paragraph.

18         THE COURT:  What's concerning to me is you say, With

19    members and associates who function as a continuing unit.

20    When you're talking about who, it does modify members and

21    associates as opposed to the formal or informal organization,

22    and I think that is not correct.

23         What is your -- what are your thoughts, Ms. Barrett,

24    as to how paragraph 2 bears on that question?

25         MS. DE SALES BARRETT:  I believe that -- paragraph 2

1   with the numbered?

2           THE COURT:  Yeah.

3           MS. DE SALES BARRETT:  I still -- continuity is an

4   element here.  Case here is *US v. Fernandez*, which says:

5           "An associated-in-fact enterprise requires proof of an

6           ongoing organization, formal or informal, which

7           exhibits a hierarchal or consensual decision-making

8           structure beyond that inherent in the alleged

9           racketeering activity, and in which various

10          associates function as a continuing unit."

11          THE COURT:  So if Point 3 was changed to "the

12  association," that refers to the ongoing -- or the -- or the

13  organization's continuance.  What I'm concerned about, though,

14  is you -- your language seems to focus on individuals, and

15  maybe that's not how you're intending it, but I think that's

16  how it could be interpreted.

17          But it does appear that paragraph 2, especially when

18  combined with adding dates to Instruction 22, seems to deal

19  with exactly what you're talking about.  Because I think we

20  agree they don't have to prove that it existed beyond that

21  relevant time period, right?

22          MS. DE SALES BARRETT:  No, but we do have to show

23  continuity over the course of the time period.  The government

24  has to prove continuity.

25          MS. STOKMAN:  And, Judge --

1        THE COURT:  It does say that the enterprise engaged

2    in this common purpose over a period of time.

3        I'm sorry, Ms. Stokman, I interrupted you.  Go ahead.

4        MS. STOKMAN:  No, I -- and this might just confuse

5    the issue more, but in our proposed instructions these were a

6    little different here as well.  We were pointing to the three

7    factors that were established in *United States v. Boyle*, [sic]

8    which were only that the enterprise has to have the three

9    features of, one, a purpose; two, relationships among those in

10   the -- those associated within the enterprise; and the

11   longevity that permits these associates to pursue the

12   enterprise purpose.

13       MS. DE SALES BARRETT:  I believe it's *Boyle* against

14   United States.

15       THE COURT:  If you prefer that language, I -- I don't

16   have a problem with it.

17       Is that -- I'm assuming, though, this is not -- well,

18   let me just look it up.

19       Yeah, I mean, it's not the model instruction.  What I

20   have is the model instruction.  So just FYI.

21       But Ms. Barrett, you're saying you prefer the

22   government's instruction, then?

23       MS. DE SALES BARRETT:  No, Your Honor.

24       THE COURT:  Okay.  Then the model instruction?

25       MS. DE SALES BARRETT:  I -- this -- are we talking

3030

1  about -- we're talking about 23 now, is that --

2           THE COURT:  Correct.

3           MS. DE SALES BARRETT:  Yes.  Okay.  I prefer the

4  Court's instruction with the addition of the "functioning as a

5  continuing unit" in paragraph 1, and adding "longevity

6  sufficient to permit the members and associates of the group

7  to pursue the group's purpose" added to paragraph 2 as a

8  Number 4.

9           MS. STOKMAN:  I think if we're going to go with the

10 elements in *Boyle*, then we should go just go through those

11 three that were laid out in this case.

12          THE COURT:  Well, actually, it -- the element of the

13 impact on interstate and foreign commerce is already

14 instructed in 22, so the model instruction repeats that, for

15 some reason.

16          So instead of the Point 3 set forth in

17 Instruction 23, uh -- Ms. Barrett, your language is exactly

18 the same as Point 3 of the government's instruction, right?

19          MS. DE SALES BARRETT:  Point 4 -- no, Your Honor --

20 Point 3?

21          THE COURT:  Yeah.

22          MS. DE SALES BARRETT:  I don't know even know where

23 we're going.  With regard to the language from *Boyle*, yes.

24          THE COURT:  So what I'm proposing is the language

25 from *Boyle* as Issue 3 here where it says, 1, purpose; 2, the

1    informal/formal organization; Point 3, longevity sufficient,

2    blah, blah, and not again repeat the instruction related to

3    the impact on interstate and -- and foreign commerce because

4    that's already instructed in the one we just talked about,

5    Number 22.

6            MS. DE SALES BARRETT:  I have no objection to that,

7    Your Honor.

8            THE COURT:  Anyone else have comments about that?

9            MS. STOKMAN:  Judge, I believe -- because 22 does not

10   lay out what interstate commerce -- like, the definition.  In

11   the government's proposed elements, it mentions that that's a

12   requirement, which is absolutely right.

13           THE COURT:  But then it's --

14           MS. STOKMAN:  I'm --

15           THE COURT:  So then four points, then?

16           MS. STOKMAN:  I think the three -- well, there is a

17   separate interstate commerce instruction which could be, on

18   its own, defining that.  I'm looking through the government's

19   proposed, because I believe we had that in there.

20           MS. DE SALES BARRETT:  It's paragraph -- it's -- the

21   second to the last paragraph of the Court's Instruction

22   Number 23 defines interstate commerce.

23           THE COURT:  Right.  But if we delete out that, then

24   it doesn't make sense.

25           I mean, it could be moved to -- nope.  It's got --

1   it's got to be included if we -- given how we modified

2   Number 22, it's got to be included there as well.  I think it

3   probably should be just be 4.

4            MS. STOKMAN:  And then leave the definition in there?

5            THE COURT:  Yeah.

6            So now we're at Instruction 24 of the packet,

7   racketeering activity.

8            MS. DE SALES BARRETT:  All I have is the typo.

9            THE COURT:  At line 7?  Or what are you referring to?

10           MS. DE SALES BARRETT:  Yes, Your Honor.

11           THE COURT:  I'll make that correction.

12           MS. STOKMAN:  And, Judge, with the addition of the

13  first element of the government's proposed, I think just

14  deleting with respect to the first element.

15           THE COURT:  Yeah.  So just basically that entire

16  first phrase, just starting, "The government must prove the

17  enterprise."

18           MS. STOKMAN:  Yes.

19           THE COURT:  All right.  Instruction 25, any comments?

20           MS. STOKMAN:  No.

21           MS. DE SALES BARRETT:  No objection.

22           THE COURT:  Number 26?  27?

23           MS. DE SALES BARRETT:  Your Honor, one moment,

24  please.  I'm just trying to coordinate here with regard to --

25  Your Honor, we -- instead of saying, "Your verdict must be

1   unanimous as to which two type" -- "which types" -- "type or

2   types of predicate racketeering activity," we request that the

3   Court say, "If you find the government has proven a pattern of

4   racketeering activity beyond a reasonable doubt, all of you

5   must agree on the same two crimes which form a pattern of

6   racketeering activity."

7           THE COURT:  So you don't want -- are you saying

8   strike the entirety of the paragraph beginning at line 13.

9           MS. DE SALES BARRETT:  No.  I think I'm just talking

10  about the sentence.

11          THE COURT:  Which --

12          MS. DE SALES BARRETT:  Yeah.

13          THE COURT:  It is only one sentence.

14          MS. DE SALES BARRETT:  Yeah.  Yeah.  We're saying

15  that if the government proves, that they must agree -- "all of

16  you must agree on the same two crimes" is the important

17  language that we would like to be substituted for "which type

18  or types of predicate racketeering activity," those words.

19          MS. STOKMAN:  That's inconsistent with what the law

20  says.  This is the -- this is the law as it pertains to that

21  element of Count 1.  And it does explain at the end of the

22  sentence, for example, at least two acts of murder conspiracy,

23  and it lists them, or one of each or any combination thereof.

24          THE COURT:  Ms. Barrett, I guess I'm still troubled

25  by where you think your language should pop in, because, you

1    know, they still have to have "the defendant knew" or

2    "contemplated would be committed."  It's not just enough to

3    say two crimes were committed.  That's doesn't get us where we

4    need to -- that would not be a correct instruction.  Sorry.

5         You seem to be saying maybe after the comma include

6    that, and then -- then start again at "the defendant knew"?

7         MS. DE SALES BARRETT:  Yes, Your Honor.

8         THE COURT:  I get what you're saying, but the

9    language, I think, is not exact.  And it suggests the same two

10   crimes, meaning it must be two acts of murder, it must be two

11   acts of fraud, it must be -- and that's not correct.

12        So I don't think that language is accurate.

13        MS. DE SALES BARRETT:  We could substitute the "same

14   two predicate acts" for --

15        THE COURT:  We don't --

16        MS. DE SALES BARRETT:  -- for "crimes."  And they all

17   have to agree on the same -- that the same acts or the acts --

18   the two that constitute their racketeering act.

19        MS. STOKMAN:  We believe as stated it's very clear as

20   to what the requirements are.

21        THE COURT:  The trouble, though -- I mean, I don't

22   really like this language because you're a lawyer; you

23   understand what predicates are.  Predicate is not defined.

24   And so which type or types of predicate racketeering activity?

25        When you go back to racketeering activity, they don't

1    say predicate.  What they say is two acts of racketeering.

2         MS. STOKMAN:  Oh, I misunderstood.  So the issue is

3    with the word "predicate."

4         THE COURT:  Well, I mean it's not just that.  It's

5    just -- it's not clear to me.  It says which type or types of

6    predicate racketeering activity, and I think predicate -- I

7    mean, I think we all know what predicate means even outside of

8    the criminal arena, but I don't know how understandable that

9    is, especially since it's not -- I mean, it seems like at

10   least it would make more sense to say which --

11        MS. STOKMAN:  -- type or types of racketeering

12   activity?  Which has been defined in the pattern of

13   racketeering.  And then the further part of the last of that

14   paragraph says "for example," and then it repeats the

15   predicate -- sorry, without using the word "predicate," the

16   racketeering acts that are in paragraph 2.

17        THE COURT:  And what if it said, "Your verdict must

18   be unanimous as to"?

19        MS. DE SALES BARRETT:  Instead of --

20        THE COURT:  Go ahead.

21        MS. DE SALES BARRETT:  -- "your verdict must be

22   unanimous," "all of you must agree."

23        THE COURT:  Well, except those instructions already

24   talk about in terms of unanimity.  That would just be a

25   change-up right there.  I prefer the consistent use of the

1  terms.

2        I mean, I really wouldn't care if everything changed

3  to that, but at this point it all says "unanimous."

4        But in any event, "Your verdict must be unanimous as

5  to the racketeering" -- "the acts of racketeering the

6  defendant knew or contemplated would be committed."

7        MS. DE SALES BARRETT:  Yes.

8        MS. STOKMAN:  I think it's accurate as to which type

9  or types, but the word "predicate" can be removed.  With the

10  word "activity," it gives the act -- I mean, it's inherent in

11  that.

12        THE COURT:  We've already told them they have to --

13  they have to find a pattern.  Now this is telling them they

14  must find which acts constitute -- are at issue in order to

15  determine whether there's a pattern, right?

16        MS. STOKMAN:  Maybe it's clearer to say "which type

17  or types of racketeering acts," because that's how the

18  beginning of this instruction reads.  It defines a

19  racketeering act.  That uses that same language.

20        THE COURT:  Right.

21        MR. REED: I've always thought they put -- I mean, I

22  don't know why they say "predicate" in there, because if you

23  read the rest of the instruction, it doesn't --

24        THE COURT:  Yeah.  That's what I was concerned about.

25        MR. REED:  It's stuck in there.  They don't use it in

1    the beginning.  They don't use it under 27, 28, 29.

2            THE COURT:  Yeah, I agree.  "Predicate" just pops up

3    there.  I think for sure we should get rid of that.

4            So what's proposed is "the type or types of

5    racketeering acts," which is defined.  But I'm not sure I'm

6    convinced by "type or types," because, you know, if -- how is

7    that different than just which racketeering acts?

8            MR. REED:  Because in the courts where they use --

9    where they break out the instructions and they use a special

10   verdict form, they list the types of racketeering acts.  So

11   when they use special verdict forms, they break them down by

12   type.

13           THE COURT:  So what your position, Mr. Reed?

14           MR. REED:  Because you're not using special verdict

15   form, I don't think --

16           THE COURT:  So you think it should say "racketeering

17   acts."

18           MR. REED:  Yeah, because it is more consistent.

19           I also think they need to add "commit" before

20   "murder" because -- just for continuity.  Every other one has

21   conspiracy to commit a robbery, conspiracy to commit, but

22   murder is by itself.

23           THE COURT:  So at least two acts of conspiracy to

24   commit.

25           MR. REED:  Then conspiracy to murder.

1          THE COURT:  Oh, yeah.

2          MR. REED:  Robbery.

3          THE COURT:  So it should just be -- actually, I'm not

4    sure what you said.  At least two acts of --

5          MS. STOKMAN:  I think he wants to add the word

6    "commit" before the word "murder" on line 21.

7          MR. REED:  But I don't -- just out of continuity, it

8    seems like it works.

9          THE COURT:  Oh.

10         MR. REED:  I never understood this instruction every

11   time I've read it.

12         MS. STOKMAN:  Judge, I think the most clear thing to

13   do would take out merely the word "predicate."  Because even

14   though I reference "act" before, I am reading again --

15   sorry -- and I was not reading this fully, line 10 on the

16   third paragraph, "I will instruct you on the definition of

17   each of these racketeering activities."

18         So I think "activity" is being used as a word

19   purposely.  But if we want to say "which act or acts of

20   racketeering activity" or "type or types" but leave out

21   "predicate."  I think that "predicate," if that's the

22   confusion, can be removed, and it makes sense.

23         THE COURT:  Well, it says "act or acts."  It can't

24   just be an act.  It has to be acts.  It has to have at least

25   more than one act, right?

1        Type or types refers to -- I mean, it doesn't -- it's

2    not a -- it's not limited to only one action.  That's a

3    difference between activity and act.  But, you know, I hear

4    what you're saying.  When I look at the subsequent

5    instructions, again, I don't think they are talking about

6    activity.

7        They are talking about acts again.  I mean, that's

8    the title.  And then when you look into the body of it, it

9    says "an overt act and act."  I don't see "activity" used

10   again.

11            MR. REED:  They use it again when you go down to 41.

12            THE COURT:  To 41?

13            MR. REED:  Yes.

14            THE COURT:  Well, racketeering activity is defined in

15   the prior one in 25.  But it talks about a racketeering

16   activity are two acts of racketeering.  So I guess that's what

17   I'm -- are we actually trying to have them identify two acts

18   of racketeering activity, which means two acts of racketeering

19   with the other elements?

20        Actually, that makes sense.  I mean, racketeering

21   activity is not just two acts of racketeering; it's two acts

22   that were related and that posed a threat.  So I've come all

23   the way back around to racketeering activity, but I don't have

24   any heartburn over deleting "type or type" and just saying

25   "which racketeering activity."

1          Any comments?

2          MS. STOKMAN:  The government is okay with that

3     proposal.

4          MS. DE SALES BARRETT:  No comments, Your Honor.

5          THE COURT:  All right.  So it will say, "Your verdict

6     must be unanimous as to which racketeering activity the

7     defendant knew, contemplated," et cetera.  "Because

8     racketeering activity is defined as at least two acts,"

9     et cetera.  All right.

10          MR. VILLA:  Before we move off that one, Judge.

11          THE COURT:  Yeah.

12          MR. VILLA:  Back on that paragraph that starts on

13     line 10.

14          THE COURT:  Okay.

15          MR. VILLA:  So the second sentence:  "The crime

16     charged is an agreement to conduct the affairs of the

17     Aryan Brotherhood."

18          I think instead of Aryan Brotherhood there and above

19     it in the first sentence, it should say "enterprise."

20          They've already been told what the alleged enterprise

21     is, I think emphasizing it here is improper and it should just

22     say, "Leaders and members and associates of the enterprise are

23     alleged to have contemplated," and "the crime charged in the

24     agreement is to conduct the affairs of the enterprise."

25          THE COURT:  Ms. Stokman, your comments?

3041

1        MS. STOKMAN:  We believe it's appropriately in here,

2   as that is the enterprise alleged and already has been

3   discussed as the alleged enterprise in this count.

4        THE COURT:  What I would be willing to do is strike

5   "Aryan Brotherhood" out at line 11, add "enterprise" in its

6   place, but leave it as to line 13.

7        MS. STOKMAN:  That's fine.

8        THE COURT:  With your objection already noted.

9        Anything else, then, on 26?

10        MR. VILLA:  No, Judge.

11        MS. STOKMAN:  No.

12        THE COURT:  27.

13        MS. STOKMAN:  Judge, we have a general comment on 27,

14   28, and 30.

15        THE COURT:  Okay.

16        MS. STOKMAN:  Uh, the first line, we believe it's

17   more appropriate to make it consistent with the way that it's

18   spelled out in the other instructions, such as Instruction

19   Number 29, where it would say, "Murder has the following

20   elements."

21        Because right now it's just talking about

22   racketeering act and not the VICAR charge.  And so those three

23   instructions were just different than the others, but the

24   others have the correct language as far as, "This crime's

25   elements are."

3042

1          THE COURT:  All right.  I think this is where I

2     deleted off the -- I think it was here -- the degrees.  I

3     wasn't quite sure of the necessity for all the degrees of

4     murder.

5          MS. STOKMAN:  We're okay with that.

6          THE COURT:  All right.  I'll change 27 to say,

7     "Murder has the following elements."

8          28, "Conspiracy to commit murder has the following

9     elements."

10          Or do you want the California law reference or not?

11          MS. STOKMAN:  I think the California law is fine to

12     keep in.

13          THE COURT:  So that be in 27, as well, then?

14          MS. STOKMAN:  Yes.

15          MS. DE SALES BARRETT:  I don't understand,

16     Your Honor, why we're removing from here the language that the

17     government must prove this?

18          MS. STOKMAN:  Because they're not charged with the

19     murder charge itself in the -- in the RICO conspiracy.  It's

20     an act, which means that they need to know what the elements

21     of that act consistent of.  It's still proof, but it's telling

22     them what the elements are under the law that they need to

23     look to to find that racketeering act.

24          The subsequent murder proof is in the VICAR charges.

25          MS. DE SALES BARRETT:  I think the government has to

1   prove it all, but --

2          THE COURT:  Yeah, it's kind of splitting hairs

3   because it has to be proved by the government.

4          MS. STOKMAN:  It's just more consistent, we believe,

5   when it lays out, because we've already established in the

6   prior instructions that these acts need to be proven.  And now

7   we're saying, here is an act, this -- these are the elements

8   of that act.

9          THE COURT:  Yeah, I get it.  But, I mean, saying you

10  have to prove RICO but not prove elements of murder under

11  California law, I mean, you know that's not true.  It's just a

12  matter of whether we remind the jury that these elements have

13  to be proved beyond a reasonable doubt.

14         I agree with you, Ms. Barrett, I think we should.  I

15  have no problem with it being consistent.  Maybe it says --

16  actually, I think just leaving as is makes sense, "To prove a

17  defendant is guilty of murder, the government must prove."  To

18  prove that the defendant is guilty of conspiracy to commit

19  murder -- I don't think we need California law, do we?

20         MR. VILLA:  I think it's required by --

21         THE COURT:  Well, then we need to include that, also,

22  in Number 27 and then do the same as to 29.

23         MS. DE SALES BARRETT:  Yeah, we're conforming 29 to

24  the same --

25         THE COURT:  Yes.

3044

1          MS. DE SALES BARRETT:  -- introduction language, yes.

2          THE COURT:  All right.  Anything else as to those

3     instructions?

4          In 30's language in that preparatory paragraph is a

5     little bit different, but I don't know that it makes any

6     difference in 30.

7          MS. STOKMAN:  Yes.  But without -- the last paragraph

8     refers back to first or second degree, which was taken out of

9     the --

10         THE COURT:  Okay.

11         MS. STOKMAN:  So that does not apply now.

12         THE COURT:  Yeah.  Delete lines 12 through 14.

13         Number 31, I'll change the first sentence to be

14    consistent.  Anything else on 31?

15         MS. DE SALES BARRETT:  No, Your Honor.

16         MS. STOKMAN:  No.

17         THE COURT:  Same with 32, I'll change for

18    consistency.  First sentence.

19         Anything else on 32?

20         MS. DE SALES BARRETT:  No, Your Honor.

21         MS. STOKMAN:  No.

22         THE COURT:  Same as to 33, anything else there?

23         MS. STOKMAN:  No.

24         MS. DE SALES BARRETT:  No, Your Honor.

25         THE COURT:  I'm assuming if no one says anything --

```
 1  I'm just hearing two noes.  If you don't have anything to say,
 2  that's fine, we'll just keep moving.
 3            MR. VILLA:  Correct, Your Honor.
 4            THE COURT:  Number 34.
 5            MS. STOKMAN:  We have a comment on 34, 35, and 36.
 6            THE COURT:  Okay.
 7            MS. STOKMAN:  Just to add, it lays out
 8  methamphetamines and fentanyl, but I think there has been
 9  testimony about other substances.  So, "or another federally
10  prohibited substance," would be appropriate.
11            MS. DE SALES BARRETT:  How does the jury know what
12  the federally prohibited substances are?
13            MS. STOKMAN:  I mean, we -- then I guess heroin was
14  discussed.
15            THE COURT:  Methamphetamine, fentanyl, heroin, I
16  think somebody talked about marijuana.
17            MS. STOKMAN:  Yes, that -- marijuana, and I think
18  because of the crossing of state lines, then that testimony
19  would apply.
20            MS. DE SALES BARRETT:  But, Your Honor, those things
21  were testified to by the cooperating witnesses with regard to
22  the identification of those drugs.  The question here is what
23  evidence the government has offered to prove the underlying
24  offense as to these defendants.  Not whether or not
25  Mr. Rapinoe was bringing heroin back from Mexico, which he
```

1  said he was doing for himself.

2  　　　　MS. STOKMAN:  As is very well known in drug cases and

3  846, 841 cases, a seizure is not required to prove those

4  offenses.

5  　　　　THE COURT:  No, what she's saying, though, is he did

6  it for his own purposes independent of --

7  　　　　MS. STOKMAN:  Oh, the heroin.  I thought there was

8  discussion of heroin elsewhere, as well, but -- that's why

9  we -- that's why we were trying to give the general federally

10 prohibited substance.

11 　　　　THE COURT:  What about the fentanyl?  I remember

12 somebody talking about having what appeared to be M30s, but

13 instead it was just acetaminophen.  Was there --

14 　　　　MS. STOKMAN:  No, it had Fentanyl in the pills as

15 well -- the lab report and the chemist discussed that, and the

16 powdered fentanyl that was with that.

17 　　　　THE COURT:  Oh, that's right.  Okay, yeah.  You're

18 right.

19 　　　　MS. DE SALES BARRETT:  But I think that those are the

20 only two drugs with regard to the testimony as to -- as

21 alleged in the indictment.  There -- there's nothing to

22 connect the other -- any other drugs to the enterprise, as

23 alleged in the indictment.

24 　　　　THE COURT:  Well, the pattern of racketeering says

25 drug trafficking.  Now, there are other counts alleged, right,

1    but those are not issue here.  Maybe I'm missing it, but I'm

2    not seeing -- well, there is an S -- paragraph S we're talking

3    about methamphetamine.

4          But otherwise, I think it's just drug trafficking,

5    right?  And then the evidence is -- refresh my recollection,

6    as to the heroin, was it only -- I mean, I can go back and

7    look, you-all can do that, too, but was there heroin mentioned

8    by someone other than Mr. Rapinoe?

9          MS. STOKMAN:  There might have been some discussion

10   of heroin within the prison.  That's our recollection, but

11   we're not sure on that.

12         THE COURT:  What about the marijuana?

13         MS. STOKMAN:  I think that was in the context of

14   interstate shipment by Mr. Rubin.  But the government is

15   not -- if marijuana is excluded, we're not going to fight

16   that.

17         THE COURT:  All right.  But the heroin -- I mean, I

18   have to know who said it when for that to be included.  And I

19   understand Ms. Barrett's point.  I mean, unless we are going

20   to tell them what the schedules are, I'm not sure how they are

21   supposed to know what is a federally controlled substance,

22   especially when you got Number 36 that says "methamphetamine

23   or fentanyl."

24         MS. STOKMAN:  Yes.  We were addressing it for 35 --

25   or 34, 35, 36, but --

3048

1          THE COURT:  Okay, yeah.

2          MS. STOKMAN:  But if the recollection is not that

3  that came in, then the methamphetamine and fentanyl can stand

4  as it is.

5          THE COURT:  All right.  We'll just -- I mean, I'm not

6  saying it didn't.  I just can't sit here today and say it did,

7  so --

8          MR. REED:  Your Honor --

9          THE COURT:  I know.

10         MR. REED:  -- you're talking about heroin?

11         THE COURT:  Yes, heroin related to the charges at

12  issue here.

13         MR. REED:  I think was only Rapinoe.

14         THE COURT:  I mean, there was discussion, but I don't

15  remember exactly the discussion related to what the drugs were

16  in prison, so we'll just leave it as is, unless there is

17  someone who wants to show me some cite.

18         MR. REED:  Rapinoe wasn't in prison, but it was

19  talking about the list of things he did.

20         THE COURT:  No, I wasn't talking about Rapinoe,

21  you're right.  You're right on him.  That -- I agree with

22  that.

23         All right.  So that's through 36.  Is there anything

24  else, then, as to those?

25         MS. DE SALES BARRETT:  Your Honor, as is true from

3049

1   the previous ones, we're going to be changing the introductory

2   sentence?

3          THE COURT:  Yeah, yeah.

4          MR. VILLA:  Your Honor, before we move on, Ms. Luem's

5   got to catch a flight, but I'm going to stay here until court

6   is adjourned, if that's okay with you.

7          THE COURT:  Okay.

8          MS. LUEM:  And Mr. Johnson --

9          MR. VILLA:  And Mr. Johnson agrees.

10          MS. LUEM:  Thank you.

11          THE COURT:  Okay.  Thank you.

12          So anything else, then?  Now we're at 37.

13          MS. STOKMAN:  No.

14          MS. DE SALES BARRETT:  No, Your Honor.

15          THE COURT:  37, I thought you made a mistake as to

16   the DMV.  Are we talking about DMV, because --

17          MS. STOKMAN:  Oh, I'm -- yeah, I didn't catch that.

18   Identification document was or appeared to be -- I think, yes,

19   that is correct.  There's testimony that fake IDs were being

20   made, fake --

21          THE COURT:  That's what I was -- thought you were

22   talking about what was found in Mr. Perkins' apartment.

23          MS. STOKMAN:  Yes.

24          THE COURT:  Okay.  All right.  38.

25          All right.  39.

1      Now we're to 40 where the government -- you had an

2  objection to 40?

3      MS. STOKMAN:  Yes.

4      THE COURT:  And I do understand now where that's

5  coming from when you compare it to the prior instruction.  I

6  guess, 23, there might have -- let me hear your comments,

7  Ms. Stokman.

8      MS. STOKMAN:  Yes.  Uh, because Count 1 -- in Count 1

9  each member associate does not have to know all of the

10  activity or crimes that are being -- that are part of that

11  RICO conspiracy.  It is possible for some members of the

12  enterprise to conspire to deal drugs while others are

13  conspiring to commit murder.  That's addressed in the actual

14  RICO conspiracy.

15      And other instructions that define the enterprise,

16  the racketeering acts, and all of that is -- is defined and is

17  part of the elements, again, of Count 1.

18      This is just a little misleading, and it conflicts

19  with those prior instructions about the enterprise and the

20  elements required for Count 1.

21      THE COURT:  I mean, there definitely was evidence of

22  other conspiracy that don't bear on Count 1.  For example,

23  Mr. Rapinoe, and his friend Ghost, they talked about doing

24  things that were separate from the time he was involved with

25  the AB.

1          But this seems to talk about the reverse, more

2     that -- I mean, it's looking at the conspiracy and saying if

3     the defendant wasn't part of the charge conspiracy, it doesn't

4     matter if it may have been found with other conspiracies.

5          I guess the question then is, Is there evidence that

6     any of the defendants were involved in conspiracies that do

7     not bear on Count 1?

8          MS. STOKMAN:  No.

9          THE COURT:  Mr. Reed, I see you're wanting to speak.

10    I'm going to ask you to turn on the mic if you choose to.

11         MR. REED:  I didn't read that instruction that way.

12    I read the instruction as, a juror finding that one of the

13    defendants may have been involved in a conspiracy that was not

14    charged, then I don't see how you can -- I was going to run

15    this instruction through Casetext.

16         But I don't see how you can -- how you can refuse to

17    give the instruction, is the general statement of the law

18    that's correct.

19         If you find someone guilty of a conspiracy that's not

20    charged, if you found a conspiracy that's not charged he was

21    involved in, then you can't find him guilty of the charged

22    conspiracy.

23         THE COURT:  What I was concerned with and was hoping

24    to nail down is, is that a -- is there evidence to suggest --

25    because I don't want to suggest to the jury that the

1   defendants were involved in some other conspiracy unless

2   there's -- I mean, I don't remember any evidence of that

3   situation that they were involved in anything other than, at

4   most, Count 1.

5        So this suggests, hey, you know what, maybe it's --

6   maybe there's some other conspiracy they're involved in and I

7   don't think there's evidence to support that.  I mean, it

8   seems like at a minimum, the last sentence isn't supported by

9   the evidence, or at least the last --

10        MR. REED:  I don't have a strong opinion on that.  I

11   think -- I can understand the Court's point.  I looked at this

12   more as a general instruction that if you find he did some

13   other bad stuff, but we didn't list that, then that's that.

14        THE COURT:  Right.  But if there isn't the other bad

15   stuff, we don't want to tell the jury, Hey, go looking for

16   that other bad stuff, because I don't remember any evidence of

17   that.  But if you're saying there was, you know.

18        MR. REED:  I'm just running it through Casetext to

19   see if there's another RICO case that dealt with the issue.

20        This is just general conspiracy law, that will be my

21   answer to the question, from what I can tell.  I don't have

22   any strong opinion.

23        THE COURT:  Anybody else?

24        MR. REED:  Although it was given in *Yandell*.

25        THE COURT:  Yeah.

1          MS. STOKMAN:  I mean, they had different conspiracies

2    also alleged in multiple counts regarding drug conspiracies

3    and other --

4          THE COURT:  Anybody have comments?

5          MS. DE SALES BARRETT:  As to 40, Your Honor.

6          THE COURT:  I'm sorry?

7          MS. DE SALES BARRETT:  As to 40.

8          THE COURT:  40.

9          MS. DE SALES BARRETT:  Yes.

10         THE COURT:  Whether it should be given or not given.

11         MS. DE SALES BARRETT:  We have requested it, so we

12    would request that the Court give it.

13         THE COURT:  It says in the comment, this is just a

14    standard instruction.  Use this instruction when the

15    indictment charges a single conspiracy and the evidence

16    indicates two or more possible conspiracies.

17         I would just have to assume that implicit in that is

18    that the other conspiracies in which the defendants are

19    implicated.  But if you think, uh --

20         MS. STOKMAN:  Judge, I mean, the government's

21    position is that this is not a correct statement of the law

22    under the RICO conspiracy.  Under such a conspiracy, again,

23    using a drug conspiracy as an example, this would make sense

24    when there might be different conspiracies within the overall

25    reaching 846 such as drugs being sent on a certain amount

1 | of -- during a certain time frame to one location with certain

2 | people and then other people are doing that to a different

3 | location on different dates.

4 |        That would be where this, uh, instruction would come

5 | into play, but that is not true of the RICO conspiracy since

6 | the instructions on that count actually lay out that it's a

7 | pattern of racketeering activity and that activity includes

8 | other members of the conspiracy and what they are doing.

9 |        THE COURT:  Yeah.  In fact, when I pull up the case

10 | cited by the -- the comment, *US v. Perry*, it's exactly that

11 | situation.

12 |        All right.  I think Instruction 40 doesn't

13 | address -- yeah, I don't think it should be given.  It's

14 | not -- I'm not going to give 40.

15 |        MS. DE SALES BARRETT:  Your Honor, there are other

16 | conspiracies that are charged.

17 |        THE COURT:  Right, but what there isn't is -- wait a

18 | minute, right.  But --

19 |        MS. DE SALES BARRETT:  As part of predicate acts and

20 | you're defining conspiracies.

21 |        THE COURT:  But what there isn't is -- I mean,

22 | they're saying these are -- the predicate acts are the

23 | enterprise -- the acts of the enterprise, right, because

24 | that's Count 1.

25 |        And you know, as it says, the defendants don't have

1  to be involved in each of those acts in order for the

2  conspiracy to exist.

3       This suggests that they're involved in a conspiracy

4  outside of Count 1.  I don't think there's evidence to support

5  that, and I don't think we should suggest to the jury that

6  they're involved in something not charged here.

7       That's what I feel like 40 is saying, especially in

8  light of what *US v. Perry* is talking about.  I think,

9  truthfully, it -- I think it's an unfair characterization of

10  the evidence as to the defendants.

11       Anyway, I'm not going to give 40.

12       As to 41, any --

13       MS. STOKMAN:  Yes.

14       THE COURT:  -- comments.  Yes?

15       MS. STOKMAN:  There's a word conspiracies, conspired,

16  that is not -- it's charged as a murder in aid of racketeering

17  and not a conspiracy, so in line 24, in line 27, in lines 2, 5

18  and 7 of page 45, it's just -- the word conspiracy should be

19  taken out of this instruction since it's not charged as a

20  conspiracy to commit murder in aid of racketeering.

21       THE COURT:  Okay.  I get it.

22       Any comments about that?

23       MS. DE SALES BARRETT:  No, Your Honor.

24       MR. VILLA:  No, Your Honor.

25       MS. DE SALES BARRETT:  We do request that in the --

1  in the preceding paragraph, that is, the first full paragraph

2  after the numbered ones, at -- before an incidental

3  motivation, the sentence beginning with that, we request that

4  the Court put, "murder while a gang member is not necessarily

5  a murder for the purpose of maintaining or increasing position

6  in a gang even if that would have the effect of maintaining or

7  increasing position," his or her position.

8          THE COURT:  Yeah, I spent a lot of time on this and I

9  went back and forth on what you were saying, and I think this

10  paragraph as stated is accurate.  It talks about the fact that

11  need not be the sole or primary purpose, only that it has this

12  as a substantial purpose.

13          And it has to be integral, so -- and then I added the

14  incidental motivation is not enough there.  I think that's

15  appropriate.  I think that's correct.  I think what you're

16  saying -- yeah, I don't think that's necessary.  I'm not going

17  do that.  I'm sorry.

18          MS. STOKMAN:  No, no, no, I'm sorry.  I just had

19  something to add that I didn't, but go ahead.

20          MR. VILLA:  I just want to make clear Mr. Johnson

21  joins in that request by Mr. Clement.

22          THE COURT:  Thank you.

23          All right.  Ms. Stokman, you were saying it

24  should -- at line 24 it should not say --

25          MS. STOKMAN:  Specific murders in aid of racketeering

1  alleged in this case are listed below.

2          THE COURT:  And then as to Count 2, you don't want

3  conspired there either.

4          MS. STOKMAN:  No, but our -- in the indictment, the

5  allegation is that the defendants aided and abetted, so it

6  should be instead of conspired, the aided and abetted language

7  should be there on each of the murders listed on the end of

8  page 44 and all on page 45.

9          THE COURT:  All right.  Comments about that for

10  Mr. Johnson and --

11          MS. DE SALES BARRETT:  No, Your Honor.

12          MR. VILLA:  No, Your Honor.

13          THE COURT:  All right.  So I'll make that change.

14          MS. STOKMAN:  Judge, if it helps, the government has

15  no other issues with the instructions after this except we did

16  find there were missing instructions.  But if counsel had

17  issues, then we can go right to those instructions.

18          THE COURT:  All right.  So after 42 through the end,

19  is there -- well, I -- I can't imagine you've got a problem

20  with 43.  Is there anything wrong with 42?

21          MS. DE SALES BARRETT:  No, Your Honor.

22          THE COURT:  All right.  Then what is missing, let's

23  start with the government on that topic?

24          MS. STOKMAN:  Uh, there was an instruction about

25  transcripts and the audio, which would apply because -- that

1    the transcript is not the evidence, that the audio is.

2          THE COURT:  Right.  That should be included.  I think

3    everyone agrees on that.

4          MS. DE SALES BARRETT:  Yes, Your Honor.

5          MR. VILLA:  Yes, Judge.

6          MS. STOKMAN:  And I think -- and I'm not sure if it

7    would be a statement of fact, but because of the judicial

8    notice of the UTC, and I believe of Mr. Clement's name there

9    was judicial notice taken, that would be a statement of facts

10   that the Court had given and that instruction is not in here.

11         THE COURT:  All right.  Anything else that you feel

12   is missing on behalf of the government?

13         MS. STOKMAN:  No.

14         MS. DE SALES BARRETT:  May I have a moment,

15   Your Honor?

16         THE COURT:  Yeah.

17         MS. DE SALES BARRETT:  Thank you.

18         THE COURT:  I can start with someone else.  Wait,

19   they're conferring.  Never mind.

20         MS. DE SALES BARRETT:  Thank you, Your Honor.  We

21   have nothing further.

22         THE COURT:  Mr. Villa?

23         MR. VILLA:  Nothing further.

24         THE COURT:  Mr. Reed?

25         MR. REED:  Nothing further, Your Honor.

1          THE COURT:  All right, then.  We'll make these

2     corrections and shoot you out a copy of them.

3          If it turns out you see something that's not right,

4     let me know that.  We can get you a new set on Monday.  So

5     what I'll typically do on Tuesday is I will give substantive

6     instructions, and then stop and you-all will do your closing.

7          Then once that's finished, I will go and give the

8     procedural type instructions, so you will be able to use the

9     instructions in your argument, if you choose.

10         All right.  Anything else?  Anything that counsel

11    needed to talk about?

12         MS. FISHER-BYRIALSEN:  Your Honor, did the jury

13    indicate if they wanted to end at a certain time or not yet?

14    (Discussion was had off the record.)

15         THE COURT:  So we won't know that until Tuesday

16    morning.

17         MR. VILLA:  Judge, I don't know if we need to since

18    there was no presentation of defense evidence or government

19    evidence in rebuttal, but for the record, we renew our motion

20    for judgment of acquittal.

21         THE COURT:  All right, on the same grounds.  All

22    right.

23         MS. DE SALES BARRETT:  We join in that motion,

24    Your Honor.  Thank you.

25         THE COURT:  I assume.  And Mr. Reed, you join as

3060

1    well.

2         The government, you have the same opposition,

3    correct?

4         MS. STOKMAN:  Yes.

5         THE COURT:  All right.  I will take that matter under

6    submission as well.  All right.  Thank you.

7       (Proceedings were adjourned at 11:12 a.m.)

8

9

10

11

12

13

14      I, RACHAEL LUNDY, Official Reporter, do hereby certify the

15    foregoing transcript as true and correct.

16

17    Dated:  February 8, 2025          /s/ Rachael Lundy_____
                                        RACHAEL LUNDY, CSR-RMR
18                                      CSR No. 13815

19

20

21

22

23

24

25